## ANTHONY R. MARTIN *v.* JAMES BRADY ET AL.
### (SC 16583)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

Argued April 26—officially released August 13, 2002

*Norman A. Pattis*, for the appellant (plaintiff).

*Eliot Prescott*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellees (defendants).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether the defendant state police officers are immune from suit by virtue of statutory, personal immunity under General Statutes § 4-165[1] and, therefore, are not liable to the plaintiff for their alleged acts of misconduct. The plaintiff, Anthony R. Martin, claims that the defendants, State Troopers James Brady, Andre Joyner and Thomas Inglis and Detective Jeff Correia, violated his state constitutional rights while searching his property and seizing him for arrest. The plaintiff initially contended that he is entitled to bring this action against the defendants because his claim arises from a violation of his rights under article first, §§ 7 and 9, of the constitution of Connecticut,[2] and is authorized by General

[1] General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . ."

[2] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

Statutes § 4-142 (2)[3] and *Binette* v. *Sabo*, 244 Conn. 23, 710 A.2d 688 (1998).

As the case was decided in the Appellate Court, it concerned whether the plaintiff's complaint was sufficient to withstand the defendants' jurisdictional challenge on *sovereign* immunity grounds. *Martin* v. *Brady*, 64 Conn. App. 433, 436, 780 A.2d 961 (2001). The Appellate Court affirmed the trial court's dismissal on sovereign immunity grounds. Id., 442. We then granted the plaintiff's petition for certification to appeal, limited to the following issue: "Whether the Appellate Court properly concluded that *Binette* v. *Sabo*, [supra, 244 Conn. 23], does not permit the plaintiff's tort action because (1) the defendants are protected by the doctrine of sovereign immunity and (2) the facts are not sufficiently egregious?" *Martin* v. *Brady*, 258 Conn. 919, 782 A.2d 1244 (2001). Although the defendants' brief addressed the certified question, at oral argument before this court the defendants conceded that, in the plaintiff's complaint, properly construed, he sued them in their *individual*, rather than their *official*, capacities, and that, therefore, *Binette* v. *Sabo*, supra, 23, was inapplicable. The defendants further conceded, therefore, that the only jurisdictional question remaining was whether they were protected by the statutory, personal immunity provided by § 4-165. We decide the present case, therefore, on that basis.

The defendants claim that they are immune from suit pursuant to the statutory immunity provided by § 4-165. We agree that the defendants are statutorily immune from suit, and we affirm the judgment of the Appellate Court on this alternate ground.

---

[3] General Statutes § 4-142 provides in relevant part: "There shall be a Claims Commissioner who shall hear and determine all claims against the state except . . . (2) claims upon which suit otherwise is authorized by law including suits to recover similar relief arising from the same set of facts . . . ."

The record reveals the following facts and procedural history. The plaintiff, who was a resident of Florida, was convicted of criminal mischief in that state. Following that conviction, he came to Connecticut, where he has owned a home for the past fifty years. Florida considered him a fugitive and initiated extradition proceedings against him. Pursuant to those proceedings, the court issued an extradition arrest warrant and the defendants attempted to locate and arrest the plaintiff.

In his complaint, the plaintiff alleged that, during the defendants' attempts to locate and arrest him, they searched his home on two separate occasions, once without a warrant and once pursuant to a warrant fraudulently obtained; they executed a false affidavit that was the basis on which the search warrant was obtained; they destroyed the plaintiff's property; and they physically assaulted him. The plaintiff claims that such actions constituted a deprivation of his constitutional right to be free from unreasonable searches and seizures of his person and property, and a denial of procedural and substantive due process. He further alleged that, as a result of the defendants' conduct, he suffered economic loss and emotional distress.

The defendants moved to dismiss the action against them, contending that the trial court lacked subject matter jurisdiction because the plaintiff's claims were barred by sovereign immunity, statutory immunity, and by his failure to exhaust his administrative remedies. The trial court granted the motion to dismiss on the ground that the court lacked subject matter jurisdiction, and rendered judgment accordingly.

Thereafter, the plaintiff appealed to the Appellate Court, claiming that under *Binette* v. *Sabo*, supra, 244 Conn. 23, a claim alleging a constitutional violation is a claim "upon which suit otherwise is authorized by law" within the meaning of § 4-142 and, therefore, falls

within one of the exceptions to the requirement to file suit with the claims commissioner. *Martin* v. *Brady*, supra, 64 Conn. App. 438. Therefore, in the plaintiff's view, the trial court had subject matter jurisdiction. The Appellate Court affirmed the judgment of the trial court, concluding that the plaintiff's claims were barred by sovereign immunity and, furthermore, that the facts alleged were not sufficiently egregious to state a cause of action under *Binette*. Id., 433. Having concluded that sovereign immunity barred the plaintiff's claim, the Appellate Court did not reach the issue of whether the plaintiff's claim was barred by statutory immunity pursuant to § 4-165. Following our grant of certification, the plaintiff appealed to this court.

We begin by setting forth the relevant standard of review that guides our decision in the present case. "[T]he doctrine of [statutory] immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . Because this case comes to us on a threshold [statutory] immunity issue, pursuant to a motion to dismiss . . . we do not pass on whether the complaint was legally sufficient to state a cause of action. . . . In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts . . . with respect to personal immunity under § 4-165, to support a conclusion that the defendant[s] [were] acting outside the scope of [their] employment or wilfully or maliciously." (Citations omitted; internal quotation marks omitted.) *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 642 A.2d 699 (1994). The question before us, therefore, is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive a motion to dismiss on the ground of statutory immunity.

The complaint alleged that the defendants committed three separate instances of misconduct. The plaintiff claimed that one or more of the defendants: (1) forcibly entered the plaintiff's home without a search warrant, striking and pushing him to the floor after he submitted to arrest; (2) searched his home pursuant to a search warrant obtained pursuant to a false affidavit; and (3) during that search, smashed windows and broke down doors. The complaint explicitly alleged that at all times each of the defendants acted under color of law and that each defendant was being sued in his individual capacity.

We conclude that the plaintiff's claims as alleged in the complaint are barred by the statutory immunity provided for in § 4-165. Section 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ." We conclude that the plaintiff has alleged conduct on the part of the defendants that fell within the scope of their employment, and that the allegations were insufficient to allege either wantonness, recklessness or malice.

In order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted statutory authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment. In *Antinerella* v. *Rioux*, supra, 229 Conn. 499, we held that the high sheriff's discharge of the plaintiff, although pursuant to the authority granted to the high sheriff by then General Statutes (Rev. to 1991) § 6-45,[4] was actually wrongful

---

[4] General Statutes (Rev. to 1991) § 6-45 provides in relevant part: "Appointments of deputy sheriffs shall be in writing, under the hand of the sheriff . . . . The sheriff may, at his pleasure, dismiss from office the deputies appointed by him, but only upon his delivering to the person removed a written discharge and filing a copy thereof with the clerk of the superior court in such county for record in the records of said court."

conduct because it was conducted in furtherance of an illegal fee splitting scheme and, as such, was a misuse of the authority granted to him. We explained therein that "the defendant's misuse of his authority was personal to him and was not primarily employer rooted or reasonably incidental to the performance of employment duties. . . . The defendant's alleged conduct was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest. Rather, the defendant's alleged actions were motivated by purely personal considerations entirely extraneous to his employer's interest." (Citation omitted; internal quotation marks omitted.) Id.

Furthermore, in *Shay* v. *Rossi*, 253 Conn. 134, 174, 749 A.2d 1147 (2000), we determined that the defendants, individuals employed by the state department of children and families, had acted beyond the scope of their employment when acting "solely . . . to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted . . . ." The plaintiffs in *Shay* alleged that "the defendants' conclusion that neglect and abuse of the [plaintiffs'] children had been confirmed was without foundation, unreasonable, arbitrary, wilful, wanton, reckless and malicious, and designed to vindicate and legiti[mize] their handling of the [plaintiffs'] case which was, from the outset, unlawful, uncaring, and unnecessary." (Internal quotation marks omitted.) Id., 173. We concluded that the defendants' "improper and self-serving motives" were provable under these allegations and that such conduct was beyond the ambit of the employment context and, accordingly, not protected by sovereign immunity. Id., 173–74.

In the present case, the plaintiff has alleged that the defendants sought his arrest, executed a search warrant and conducted a search in an attempt to effectuate that arrest. None of these actions was arguably outside the

scope of their employment as state police officers. The arrest of the plaintiff was sought for legitimate government interests; namely, the extradition of a fugitive, the plaintiff, pursuant to a warrant issued by the state of Florida. There was no allegation of a misuse of governmental authority for personal gain, as in *Antinerella,* nor was there any allegation of the extraneous manipulation of government authority in order to justify erroneous conduct, as this court found in *Shay.*

We next consider the exception to the immunity provided in § 4-165, and assess whether the plaintiff has sufficiently alleged that the defendants' conduct was "wanton, reckless or malicious." We conclude that it was not. As we have observed, "[w]e have never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165. In the common-law context, however, we have stated: In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Id., 181. Indeed, in some instances, the mere fact that an official has acted in excess of his or her authority may suffice to prove that the conduct was wanton, reckless or malicious. See id., 182 ("[t]he same

facts and allegations that led us to conclude that the defendants' conduct was in excess of their statutory authority, lead us to conclude that the defendants could be found to have acted wantonly, recklessly or maliciously").

In the present case, we conclude that the plaintiff's complaint fails to allege facts, taken in the light most favorable to the plaintiff, to demonstrate that the defendants acted in a wanton, reckless or malicious manner. There is no allegation in the complaint from which we can infer that the defendants' conduct was indicative of such a state of mind or that the conduct rose to the level of egregiousness necessary to be considered wanton, reckless or malicious. To the contrary, the facts, as alleged, present a search and arrest conditioned upon an extradition warrant issued by the state of Florida, the validity of which is unchallenged by the plaintiff, and a search conducted pursuant to an allegedly false affidavit. The facts concerning the initial search and arrest are not inconsistent with the statutory authority provided to the state police pursuant to General Statutes § 53a-22 (b).[5] Moreover, although the plaintiff argues that the affidavit upon which the second search was premised was based upon false statements,[6]

---

[5] General Statutes § 53a-22 (b) provides in relevant part: "[A] peace officer . . . is justified in using physical force upon another person when and to the extent that he reasonably believes such to,be necessary to: (1) Effect an arrest . . . of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest . . . is unauthorized; or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest . . . ."

[6] The plaintiff alleged that the affidavit included the following false claims: "(1) Brady/Joyner claimed that under Florida law, contempt was a felony. (2) Brady/Joyner claimed that [the plaintiff] 'failed to reappear when scheduled to do so.' (3) Brady/Joyner claimed defendant Inglis claimed that he spoke with [the plaintiff] on one occasion and [the plaintiff] refused to come to the door. [The plaintiff] never refused to come to any door. (4) Brady/Joyner claimed that [the plaintiff] was 'hiding behind a couch,' although in fact [the plaintiff] made no attempt to conceal himself or to frustrate the defendants after they had broken into his house without a warrant on October 6, 1998."

he has failed to allege facts sufficient to support the preliminary showing for such a claim as required by *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). *Franks* requires a substantial preliminary showing that a false statement was made knowingly and intentionally, or with reckless disregard for the truth. Id., 155–56. The plaintiff neither met this requirement nor requested a hearing that would have enabled him to pursue this claim. *Martin* v. *Brady*, supra, 64 Conn. App. 441. In sum, the plaintiff has not alleged any facts that suggest that the defendants' conduct was either outside the scope of their employment or that it was wanton, reckless or malicious. Accordingly, the plaintiff's claim must fail.

Because both parties agree that the plaintiff's complaint is brought against the defendants only in their individual capacities and because the plaintiff's claim is consequently barred by the statutory immunity provided by § 4-165, we need not address the plaintiff's claim that the defendants are not protected by sovereign immunity.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.