[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I FACTS
On March 4, 1999, the plaintiff, David Best, filed a two-count complaint[1] against the defendants, Linda D'Amario-Rossi and Jean Leitz. The plaintiff is the administrator of the estate of Mahkeva Best, the plaintiff's decedent daughter. Mahkeva Best was killed by Kenya Best, her mother and the plaintiff's wife. At the time of Mahkeva Best's death, D'Amario-Rossi was the commissioner of the department of children and families (the department). Leitz was a social worker or social worker trainee at the time of Mahkeva Best's death.
Count one of the plaintiff's complaint purports to bring a cause of action against the defendants for violating Mahkeva Best's right to due process as guaranteed by the constitution of Connecticut, article first, § 8.[2] Count two purports to bring an action against the defendants under 42 U.S.C. § 1983.[3] On March 8, 1999, the defendants filed a motion to dismiss the complaint on the ground that the court lacks subject matter jurisdiction over both counts of the complaint. To support their motion, the defendants submit the affidavit of Leitz, reports logging contact between the plaintiff and the department, letters sent from the department to the plaintiff and various documents regarding the plaintiff's criminal record. On June 11, 1999, the plaintiff filed a memorandum in opposition to the defendants' motion to dismiss. To support his memorandum, the plaintiff submits his affidavit, the affidavit of Kim Brown and the affidavit of Tammy Smith.
On August 10, 1999, the defendants filed a reply memorandum to the plaintiffs memorandum in opposition. On April 29, 2002, the plaintiff filed a supplemental memorandum in opposition to the defendants' motion to dismiss. In support of his supplemental memorandum, the plaintiff CT Page 104 submits portions of two depositions of Leitz, portions of the deposition of James Funaro and a narrative department report discussing communications between the department and the plaintiff. On April 30, 2002, the defendants filed a supplemental memorandum in support of their motion to dismiss. The defendants submit further evidence to support their motion including portions of two depositions of the plaintiff, the plaintiff's affidavit, two depositions of Leitz, several DCF records, Leitz's affidavit, the deposition of Patrick Sexton and a transcript of a hearing where the court, Carroll, J., entered a protective order against Kenya Best. The court held an evidentiary hearing on September 23, 2002 to resolve disputed issues of fact that remained after the parties submitted their briefs and evidence. The court now enters this memorandum of decision as to the defendants' motion to dismiss.
 II DISCUSSION
"A motion to dismiss shall be used to assert lack of jurisdiction over the subject matter, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) Kizis v. Morse Diesel International, Inc., 260 Conn. 46, 51, 794 A.2d 498 (2002). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991
(1983). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 410-11, 722 A.2d 271 (1999).
"The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 59, 62, 539 A.2d 1000 (1988). "[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.) Dowling v. Slotnik, 244 Conn. 781, 787,712 A.2d 396, cert. denied, 525 U.S. 1017, 119 S.Ct. 542, 142 L.Ed.2d 451
(1998). CT Page 105
The defendants move to dismiss the plaintiff's entire complaint on the grounds that the court lacks subject matter jurisdiction for both counts against the defendants in their official capacities based on the protection of sovereign immunity, the court lacks subject matter jurisdiction for both counts against the defendants in their individual capacities because of the protection afforded pursuant to General Statutes § 4-165,[4] the court lacks subject matter jurisdiction over the alleged state and federal constitutional violations because the lack of personal involvement and responsibility of both defendants in Mahkeva Best's death and the court lacks subject matter jurisdiction because there is no constitutional duty to protect a child not in the custody of the state.
 A Count One
Count one of the plaintiffs complaint asserts a cause of action under the due process clause of the Connecticut constitution. The plaintiff does not allege whether he is suing the defendants in their official or individual capacities. Because on a motion to dismiss the court must construe the allegations in the manner most favorable to the pleader, the court will analyze whether the allegations are sufficient to establish subject matter jurisdiction over the action against the defendants in their official or individual capacities.
 OFFICIAL CAPACITIES
The Supreme Court has "recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." (Internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134, 168, 749 A.2d 1147 (2000). "It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit." (Internal quotation marks omitted.) Id. "Sovereign immunity does not bar suits against state officials acting in excess of their statutory authority or pursuant to an unconstitutional statute." Id., 169.
There are no allegations, argument or evidence here to support that the defendants were acting pursuant to an unconstitutional statute. To overcome the sovereign immunity shield enjoyed by the state, the plaintiff instead relies on the argument that by failing to investigate CT Page 106 the "repeated" reports of neglect and abuse that Mahkeva Best was enduring at the hands of Kenya Best, that the defendants were acting in excess of their "mandatory affirmative statutory duty" pursuant to General Statutes § 17a-101[5] et seq. Although the plaintiff does not allege that the defendants acted in excess of their statutory authority, the plaintiff argues that the allegations and evidence support this factual finding. "In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine . . . In such instances, the need to protect the government simply does not arise and the government cannot justifiably claim interference with its functions. . . . Where [however] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 169.
In Shay, the Supreme Court acknowledged that it has not yet defined the "in excess of statutory authority" requirement for the exception to sovereign immunity. Id., 170. Shay and Antimerella v. Rioux, 229 Conn. 479,642 A.2d 699 (1994) are instructive as to what facts a plaintiff must allege or prove to state a substantial claim that the state officer acted in excess of statutory authority. In Antinerella, the Supreme Court stated: "Although we have recognized the legal principle that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority, we have never had occasion actually to apply that doctrine. This case presents the first opportunity to do so." Id., 489. Regarding Antimerella, the Supreme Court stated: "[Antimerella] was the first case in which we were called upon actually to apply the doctrine that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority. . . . In that case, we concluded that allegations that the defendant, the high sheriff of Hartford county, had discharged the plaintiff, a deputy sheriff, in order to take his business and personally benefit under the statutorily forbidden and illegal fee splitting arrangements he had made with several appointed deputy sheriffs, were sufficient to constitute an action in excess of the defendant's statutory authority to discharge the plaintiff under the at-will employee doctrine. . . . Important to that conclusion, moreover, was the notion that the defendant's alleged conduct contravened the clear public policy that a high sheriff may not engage in fee splitting. . . ." (Citations omitted; internal quotation marks omitted.) Shay v. Rossi, supra, 253 Conn. 169-70. CT Page 107
The Supreme Court also stated: "When . . . the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit." Antimerella v. Rioux, supra, 229 Conn. 497. "By our decision we do not chip away at the doctrine, relax its parameters or expand any well developed exceptions. Rather than rely on any exception to the rule, we hold simply that the doctrine does not apply when there is a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority." Id. The latest Supreme Court case regarding this exception to the sovereign immunity bar is Shay. In Shay, "the plaintiffs alleged [the department] initiated and pursued child abuse and neglect proceedings against the Shay parents based on [the department's] suspicions of child abuse and neglect. Well after [the department] knew their suspicions were mistaken, and had reliable and convincing information of the error, [the department] continued and persisted in their efforts to remove the children from their parents' home and care and to otherwise interfere with the parents' and the children's lives." Urban v. Commissioner of Children and Families, Superior Court, judicial district of Middlesex at Middletown, Docket No. 091539 (May 11, 2001, Parker, I.)
In holding that these factual allegations were sufficient to rise to the level of exceeding the department's statutory authority, the Supreme Court stated: "The improper and self-serving motives that could be proven under these factual allegations were that, by the time that the petitions were filed and by the time that the in-home supervision was ordered to continue, the defendants knew that these actions were legally and factually unjustified; that the defendants filed the petitions knowing that they were unwarranted; and that they nonetheless pursued the petitions and the in-home supervision of the family, not for the statutory purpose of protecting any of the Shay children, but in order to justify those prior unjustified actions. In [Antinerella], we stated that when "the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit.' Similarly, if the defendants here acted solely in order to justify their own prior unjustified conduct, and not to carry out the government policy with which they were entrusted, there would be no reason to provide immunity from suit." Shay v. Rossi, supra,253 Conn. 173-74. "[I]n order to overcome sovereign immunity, the plaintiffs must do more than allege that the defendants' conduct was in excess of their statutory authority; they must also allege or otherwise establish facts that reasonably support those allegations." Id., 174-75.
Applying the Antinerella and Shay decisions here, it is clear that the allegations and evidence that the plaintiff has set forth do not rise to CT Page 108 the level necessary to meet the in excess of statutory authority exception to the shield of sovereign immunity. Here, the plaintiff alleges that the former commissioner and social worker failed to investigate abuse or neglect of Mahkeva Best after receiving repeated reports of this conduct. On the contrary, Jean Leitz repeatedly spoke with David Best, who never directly expressed any concerns for his daughter's physical safety "while in her mother's care. Leitz provided Best with the DCF toll free "care line" telephone number which gave him twenty-four hour a day, seven days a, week DCF access if he had any safety concerns regarding his children. Leitz noted and reported to her supervisor, Bob Allensworth, that Best was concerned about Mahkeva's diaper rash; Kenya Best's alleged mental health problem; her alleged failure to take her prescribed medication; her alleged drug problem; and Kenya's exconvict boyfriend, Daryl Walker. After Leitz was first assigned to the David Best matter, on several occasions she unsuccessfully attempted to contact the Waterbury DCF office about Best's concerns. At a minimum, however, the Waterbury DCF office had access, through the Lynx computer system, to information obtained by Carolyn Colucci, the DCF investigation worker, about Kenya Best's alleged history of depression and failure to take her medication. Colucci had also directly conveyed information she learned from Best to James Fenarro, a Waterbury DCF investigator who had conducted a parallel investigation regarding Kenya Best. Prior to Leitz's first meeting with David Best, the Waterbury DCF had opened and closed its investigation of Kenya Best without taking any action. Leitz knew about the Waterbury DCF investigation and the results. She talked to her supervisor in Danbury about the Waterbury DCF investigation in relation to the Danbury matter involving David Best and was advised to focus her efforts on the latter. There is nothing in the evidence which suggests that either defendant did anything to further her own illegal scheme or to avoid carrying out government policy.
The omissions complained of here are not in the nature of the actions found to be sufficient to avoid sovereign immunity in Shay and Antimerella. There is no evidence of illegal conduct or improper motives here by either defendant. Accordingly, sovereign immunity bars an action against the defendants in their official capacities.
 INDIVIDUAL CAPACITIES
The defendants also move to dismiss count one on the ground that §4-165 bars suit against them in their individual capacities because their conduct does not fall under the wanton, reckless or malicious exception to this statutory immunity.
Section 4-165 bars suit against state employees in their individual CT Page 109 capacities unless this exception is met.[6] Here, the plaintiff does not specifically allege that the defendants' conduct was wanton, reckless or malicious to fall outside the statutory protection of § 4-165. The plaintiff argues, however, that the allegations factually support such a finding.
The Supreme Court has "never definitively determined the meaning of wanton, reckless or malicious as used in § 4-165. In the common-law context, however, [the Supreme Court has] stated: In order to establish that the defendants' conduct was wanton, reckless, wilful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts. . . . [Such conduct] is more than negligence, more than gross negligence. . . . [I]n order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action . . . [In sum, such] conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) Martin v. Brady, 261 Conn. 372, 379,802 A.2d 814 (2002). "We see no reason to give a different meaning to that phrase as used in § 4-165." (Citations omitted.) Shay v. Rossi, supra, 253 Conn. 181-82.
In the present case, the allegations and evidence do not rise to the level of alleging and proving wanton, reckless or malicious conduct to take the case outside of the statutory immunity afforded under § 4-165. The evidence shows that David Best did talk with Leitz about some concerns he had about his daughter. None of these expressed concerns, however, directly indicated that Mahkeva in physical danger while in her mother's care. Leitz told her supervisor whatever Best told her about Kenya Best. In addition, Leitz gave information to Best about the DCF care line and attempted to contact the Waterbury DCF about issues concerning Kenya Best. Even after the court views the evidence in the light most favorable to the plaintiff, there is still nothing in it which brings the allegations of the complaint within the statutory exception. See Martin v. Brady, supra, 261 Conn. 379-81 (discussing when the exception to § 4-165 is applicable). Here, the evidence demonstrates merely that the defendants were at most negligent in not investigating the allegations of abuse reported by the plaintiff.
 VIOLATION OF ARTICLE I, § 8 OF THE CONSTITUTION OF CONNECTICUT
CT Page 110
The plaintiff next asserts that because count one sounds as a state constitutional violation, the doctrine of sovereign immunity is inapplicable. The plaintiff relies on Binette v. Sabo, 244 Conn. 23,710 A.2d 688 (1998), where the Supreme Court for the first time recognized a cause of action pursuant to Article I, §§ 7 and 9 of the constitution of Connecticut. The Supreme Court decided that the viability of future constitutional claims would be decided on a case by case basis based on specific factors. Id., 48.[7] The plaintiff argues that the factors weighing in favor of recognizing a cause of action pursuant to Article I, § 8 exist in the present case. The court declines to accept the plaintiffs invitation to recognize a new constitutional cause of action in Connecticut. "Since our Supreme Court has yet to recognize a cause of action for money damages for a deprivation of fundamental rights under article first, [§] 8 of the state constitution, this court is without authority to do so. In fact, in Kelley Property Development, Inc. v. Lebanon, [226 Conn. 314, 330-43, 627 A.2d 909 (1993)], the Supreme Court specifically declined to create such a cause of action, holding that the court should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy. This court is "bound by our Supreme Court's limitation of the contours of article first, § 8, of the constitution of Connecticut.'" Czap v. Newtown, Superior Court, judicial district of Danbury, Docket No. 322425 (December 12, 1996, Moraghan, J.). Although the plaintiff argues that here, unlike in Kelley, no alternative statutory remedy or other remedy exists to redress the claimed deprivation of Mahkeva Best's rights, the legislature has provided an extensive child welfare statutory scheme regulating the department[8]
and has enacted a process for a claim to be brought to the claims commissioner.
Even if the court was inclined to recognize a cause of action pursuant to Article I, § 8, the court here would lack subject matter jurisdiction to hear the claim. Binnette dealt with a constitutional cause of action initiated against municipal employees; so the doctrine of sovereign immunity was not an issue. See Binnette v. Sabo, supra,244 Conn. 26. There are no allegations or evidence in the present case establishing that the plaintiff made a claim with the claims commissioner. Absent the filing of a claim, the plaintiff has failed to exhaust his administrative remedies pursuant to General Statutes §4-141 et. seq. A claim for relief invoking a provision of the constitution of Connecticut is not one of the exemptions from filing a suit with the claims commissioner. See Martin v. Brady, 64 Conn. App. 433,434-35, 780 A.2d 961 (2001), aff'd, 261 Conn. 372, 802 A.2d 814 (2002). CT Page 111
There is no claim or evidence in the present case that recourse to the Claims Commissioner would have resulted in an inadequate remedy. "Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Citation omitted.) Drumm v. Brown, 245 Conn. 657, 676, 716 A.2d 50 (1998). Accordingly, the court lacks jurisdiction over the plaintiff's constitutional claim.
Based on the foregoing analysis, count one of the plaintiff's complaint is dismissed because the common law doctrine of sovereign immunity and statutory immunity bar such action. Additionally, the court rejects the recognition of a new constitutional cause of action in Connecticut, which the court would not have jurisdiction to hear in any event because of the plaintiff's failure to exhaust his administrative remedies. Accordingly, the court lacks subject matter jurisdiction and the defendants' motion to dismiss count one is granted as to both defendants.
 B Count Two
Count two incorporates the allegations from count one and purports to bring a cause of action for conduct "taken under color of law and [violating] Mahkeva Best's right to due process as guaranteed by theFifth and Fourteenth Amendments to the United States Constitution, causing her the injuries set forth herein." The plaintiff also alleges that "[p]ursuant to 42 U.S.C. § 1988, plaintiff is entitled to recovery of the Estate's attorney's fees and costs incurred in prosecuting this action." In their reply memorandum filed on August 10, 1999, the defendants essentially argue that absent a specific allegation that the defendants violated 42 U.S.C. § 1983, count two of the complaint should be stricken for failure to state a claim. In their supporting memorandum to the motion to dismiss, the defendants acknowledge, however, that "[g]iven the request pursuant to 42 U.S.C. [§] 1988 contained in paragraph 28, it appears a claim for damages pursuant to [§] 42 U.S.C. § 1983 is being made under the second count." The defendants go on to extensively argue why the42 U.S.C. § 1983 claim should be dismissed in the present case.
Although the plaintiff does not specifically refer to 42 U.S.C. § 1983
in count two, he is not required to do so to state a claim under the CT Page 112 statute. Practice Book § 10-3(a), which states in relevant part: "When any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number," is directory rather than mandatory. See Hanover Ins. Co. v. Fireman's Fund Ins. Co.,217 Conn. 340, 345, 586 A.2d 567 (1991). Section 10-3 "is designed to assure sufficient notice to the [defendant] of the statutory [basis] upon which a [plaintiff] intends to rely." Id. The defendants clearly have notice that count two is based on 42 U.S.C. § 1983. At this stage of litigation, the court rejects the defendants argument that the second count should be dismissed because it does not sufficiently state a42 U.S.C. § 1983 cause of action.
The defendants argue, and the plaintiff concedes, that a42 U.S.C. § 1983 claim cannot be brought against state officers in their official capacity. See Will v. Michigan Dept. of State Police,491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[N]either a state nor its officials acting in their official capacities are "persons' under § 1983"). Accordingly, the plaintiff may not seek money damages from the defendants in their official capacities under42 U.S.C. § 1983.
The plaintiff argues that count two attacks the defendants for actions committed in their individual capacities. Citing to DeShaney v. Winnebago County Social Services Dept., 489 U.S. 189, 109 S.Ct. 998,103 L.Ed.2d 249
(1989), the defendants argue that count two should be dismissed because there is no federal constitutional duty to protect children not in the state's custody from private violence. Accordingly, the defendants argue the court lacks subject matter jurisdiction.
The plaintiff counters that DeShaney is not controlling because it only applies to cases where a claim is brought directly under thefourteenth
amendment. Here, the plaintiff argues, the mandatory language of §§17a-101 and 17a-103 conferred life and liberty interests upon Mahkeva Best, which are protected under the federal due process clause. Accordingly, the defendants' violations of these statutes denied Mahkeva Best these due process rights. The plaintiff relies on Hewitt v. Helms,459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), to support the proposition that where a statute creates a mandatory duty on the part of state officials, it can give rise to a constitutional deprivation if the official fails to carry out that duty.
In DeShaney v. Winnebago County Social Services Dept., supra,489 U.S. 189, "a child and his mother brought action under42 U.S.C. § 1983 against the county department of social services alleging that the department had deprived the child of due process of law CT Page 113 by failing to intervene and to protect him from violence perpetrated against him by his father. The court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors.'" Klein v. Stamford, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 129999 (June 13, 1994, Mottolese, J.). The court left open the question of whether the child protection statutes gave the plaintiff an entitlement to receive protective services in accordance with their terms. See DeShaney v. Winnebago County Social Services Dept., supra, 489 U.S. 196-03.
In the present case, the plaintiff argues that the mandatory language of § 17a-101[9] conferred a liberty interest upon Mahkeva Best that was protected by the due process clause. DeShaney stands for the general rule that "the Due Process Clauses generally confer no affirmative right to government aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. . . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the state cannot be held liable under that Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago County Social Services Dept., supra, 489 U.S. 196-97. DeShaney recognized two exceptions to the general rule: 1) the "special relationship" exception and 2) the "state created danger" exception where the state played a part in making the injured party more vulnerable to the danger. "This court, therefore, is required to determine whether under DeShaney . . . the statute in question creates . . . a liberty . . . interest in [the victim] that is entitled to protection under the substantive component of the due process clause of the fourteenth amendment." Klein v. Stamford, supra, Superior Court, Dockeit No. 129999.
The plaintiff's argument here is essentially that the existence of § 17a-101 creates a special relationship between the state and Mahkeva Best so as to avoid the general rule of DeShaney. Klein v. Stamford, supra, Superior Court, Docket No. 129999, is a factually similar case where the plaintiff sued two Stamford police officers and the city claiming that the officers violated the plaintiff's substantive due process rights for which 42 U.S.C. § 1983 provides a remedy. The plaintiff claimed that the officers violated their duties to investigate an incident, arrest a perpetrator and safeguard her under the provisions of General Statutes § 46b-38b (a).[10] In Klein, the plaintiff argued that the mandatory language of § 46b-38b created a liberty CT Page 114 interest that the police must protect. The court granted the defendant's motion to strike holding that the plaintiff did not sufficiently state a cause of action under 42 U.S.C. § 1983.
The crux of the special relationship exception is that the state have some sort of custody over the victim who is harmed. It seems that the cases that recognize a protected liberty interest under Hewitt all have factually in common state custodial relationship of the victim. "[I]t is apparent that the rule of Hewitt v. Helms, supra, 459 U.S. 460, has been applied only where the actor complained of is the government and explicit statutory provisions mandate direct governmental action, the failure of which results in harm to the victim. The rule does not apply where failure to act by the government provides an opportunity for harm caused the victim by a private individual." Klein v. Stamford, supra, Superior Court, Docket No. 129999. Here, no Hewitt situation exists. The government did not have custody of Mahkeva Best and a private individual caused the harm. Accordingly, no special relationship was created.
Also, the plaintiff does not argue that the state increased the danger to Mahkeva Best and hence that exception to DeShaney is inapposite. Accordingly, the court lacks subject matter jurisdiction over count two of the plaintiff's claim.
Accordingly, the defendants' motion to dismiss both counts of the plaintiff's complaint is granted.
 ___________________ White, J.