EILEEN GLORIOSO, EXECUTRIX (ESTATE OF DAVID GLORIOSO) *v.* POLICE DEPARTMENT OF THE TOWN OF BURLINGTON ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01 CV 02-0168481S

Memorandum filed March 10, 2003

*Sinoway & McEnery & Messey*, for the plaintiff.

*Howd & Ludorf*, for the named defendant et al.

*Cella, Flanagan & Weber*, for the defendant fire department of the town of Burlington.

*Eisenberg, Anderson, Michalik & Lynch,* for the defendant town of Burlington.

*Gordon, Muir & Foley,* for the defendant Bristol Hospital EMS, LLC.

*O'Brien, Tanski & Young,* for the defendant Bristol Hospital.

*Halloran & Sage,* for the defendant Campion Ambulance.

HODGSON, J. Executrix Eileen Glorioso, the plaintiff in the above-captioned case, has brought claims against several parties, including the defendant Bristol Hospital EMS, LLC (hospital), in connection with their responses to a 911 call for emergency medical attention when the plaintiff's decedent, David Glorioso, became ill while visiting relatives for Thanksgiving on November 23, 2000.

The hospital has moved to strike nine of the twelve counts against it: counts nineteen, thirty, fifty-two, sixty-three, eighty-five, ninety-six, 107, 118 and 129. It is useful to group the counts according to common issues raised in the motion to strike, and the court has done so.

STANDARD OF REVIEW ON MOTION TO STRIKE

The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim on which relief can be granted. *Vacco* v. *Microsoft Corp.,* 260 Conn. 59, 65, 793 A.2d 1042 (2002); *Sherwood* v. *Danbury Hospital,* 252 Conn. 193, 213, 746 A.2d 730 (2000); *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.,* 224 Conn. 210, 214–15, 618 A.2d 25 (1992); *Ferryman* v. *Groton,* 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. *Suffield Development*

*Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772, 802 A.2d 44 (2002); *ATC Partnership* v. *Windham*, 251 Conn. 597, 603, 741 A.2d 305 (1999), cert. denied, 530 U.S. 1214, 120 S. Ct. 2217, 147 L. Ed. 2d 249 (2000); *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 378, 698 A.2d 859 (1997); *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 388 (1997).

In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 65; *Gazo* v. *Stamford*, 255 Conn. 245, 260, 765 A.2d 505 (2001); *Bohan* v. *Last*, 236 Conn. 670, 675, 674 A.2d 839 (1996); *Sassone* v. *Lepore*, 226 Conn. 773, 780, 629 A.2d 357 (1993); *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, supra, 224 Conn. 215; *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." (Internal quotation marks omitted.) *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993).

## CLAIM OF DUPLICATION OF COUNTS

The hospital has moved to strike counts 107, 118 and 129 on the ground that they duplicate claims made in counts seventy-four, eighty-five and ninety-six. In the latter three counts, plaintiff Eileen Glorioso, the widow of the decedent, claims loss of consortium derivative of each of three claims made on behalf of her husband's estate. In the three counts targeted in the motion to strike, she claims loss of consortium derivative of each of three claims of negligence based on the theory of loss of chance.

The hospital has briefed the issue as though Eileen Glorioso were asserting her own loss of chance. The counts at issue do not suggest that she is making any claim other than a derivative claim. At oral argument, her counsel confirmed the court's understanding that counts 107, 118 and 129 are loss of consortium claims based on the loss of chance claims brought on behalf of the decedent's estate.

While counts 107, 118 and 129 may constitute surplusage in that they repeat claims of loss of consortium arising from alleged tortious conduct toward a spouse, such a pleading flaw is addressed properly not by a motion to strike but by a request to revise to eliminate the duplication. See Practice Book § 10-35. The challenged counts do state a cause of action, albeit a repetitive one, and the motion to strike them must, therefore, be denied.

## CLAIMS ASSERTING GROSS NEGLIGENCE

The hospital has moved to strike counts nineteen, fifty-two, eighty-five and 118 on the ground that there is no cause of action for "gross negligence" under Connecticut law. The plaintiff alleges that though the hospital may be entitled to immunity for ordinary negligence under the "good samaritan law," General Statutes § 52-557b, that statutory immunity does not extend to gross negligence. The plaintiff has, therefore, alleged in the challenged counts that the hospital committed gross negligence in the manner in which it handled the call for emergency assistance. Specifically, in each of these counts, the plaintiff has alleged that the hospital's personnel committed gross negligence in that they "knowingly failed to respond to the 911 call in a timely manner," and "knowingly" failed to perform cardiopulmonary resuscitation immediately, discharged or refused assistance from others on the scene, failed to perform "advance life support and [cardiopulmonary resuscitation] simultaneously, failed to know where the

ambulance was, failed to timely contact the hospital for advice, failed to properly intubate the patient," and failed to "follow proper protocols." The plaintiff asserted that the term "knowingly" means that the hospital's personnel made a decision to depart from applicable standards of care with knowledge of the likely consequences to the decedent and that such conscious departures amount to gross negligence.

The "good samaritan law," § 52-557b, provides that certain providers of emergency health care "shall not be liable to [a] person assisted for civil damages for any personal injuries which result from acts or omissions by such person in rendering the emergency care, which may constitute ordinary negligence. . . ." General Statutes § 52-557b (a). Section 52-557b also states that "[t]he immunity provided in this subsection does not apply to acts or omissions constituting gross, wilful or wanton negligence. . . ." General Statutes § 52-557b (a).

The hospital asserts that § 52-557b did not create a cause of action for gross negligence and that the plaintiff, therefore, fails to state a cause of action. The plaintiff asserts that a cause of action for gross negligence exists at common law and that § 52-557b is unconstitutional if it abolished that cause of action.

Before ruling on a statute's purported creation of rights or abrogation of rights, a court must determine whether a statute actually has such an effect. *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 266, 757 A.2d 526 (2000). "[N]o statute is to be construed as altering the common law, farther than its words import [and a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) Id., quoting *Gore* v. *People's Savings Bank*, 235 Conn. 360, 382, 665 A.2d 1341 (1995). The text of the statute is the natural starting place in interpreting a statute. *State* v. *Courchesne*, 262 Conn. 537, 546, 816 A.2d 562 (2003). "We begin our

analysis by noting that it is fundamental that statutory construction requires us to ascertain the intent of the legislature and to construe the statute in a manner that effectuates that intent." *Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services*, 231 Conn. 355, 362, 650 A.2d 147 (1994). Neither party has demonstrated that the context of the statute or its legislative history or any other key to meaning counsels a different reading than the words of the statute support with regard to the creation or abolition of any cause of action.

The text of § 52-557b suggests no effects on existing common-law causes of action other than the creation of an immunity limited to ordinary negligence. On its face, § 52-557b provides no immunity for greater breaches of the standard of care, namely, gross negligence, wilful or wanton negligence. The wording of the statute in no way suggests the abolition of any cause of action that existed at common law for gross, wilful or wanton misconduct; rather, its scope is limited to providing immunity for those persons defined in § 52-557b whose conduct in the course of rendering emergency care is below those levels of culpability; that is, for lapses that are merely negligent.

A plaintiff who seeks to make a claim under the exception from immunity for gross, wilful and wanton negligence faces a definite problem in pleading. If that plaintiff pleads only negligence, with the intention of proving that the acts or omissions actually constituted gross, wilful or wanton negligence, the claim is at risk under the immunity provision set forth. If the plaintiff pleads the words of the exception, as the plaintiff has done in the present case, the response, made by the hospital, is that Connecticut does not recognize distinct causes of action for gross negligence.

Gross negligence is merely a heightened form of negligence. Abundant appellate authority supports the conclusion that gross negligence is recognized in Connecticut jurisprudence, even though there are few occasions for characterizing the level of negligence in stating a negligence claim. In *Martin* v. *Brady,* 261 Conn. 372, 802 A.2d 814 (2002), the Supreme Court explained that wanton, wilful, reckless, intentional misconduct is "more than gross negligence."(Internal quotation marks omitted.) Id., 379. The court made the same comparison in *Shay* v. *Rossi,* 253 Conn. 134, 181, 749 A.2d 1147 (2000). Our Supreme Court can hardly be expected to have been using gross negligence as a point of comparison if gross negligence does not exist.

Gross negligence may be asserted as an intervening cause of death in a murder prosecution. *State* v. *Shabazz,* 246 Conn. 746, 752–53, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999). Gross negligence in making representations may be the basis of a finding of constructive fraud. *Brzezinek* v. *Covenant Ins. Co.,* 74 Conn. App. 1, 8, 810 A.2d 306, cert. denied, 262 Conn. 946, 815 A.2d 674 (2003).

Our Appellate Court has likewise recognized the existence of a level of negligence that is "gross negligence" in *Bolmer* v. *McKulsky,* 74 Conn. App. 499, 503, 812 A.2d 869, cert. denied, 262 Conn. 954, 818 A.2d 780 (2003), and *Hultman* v. *Blumenthal,* 67 Conn. App. 613, 624 n. 12, 787 A.2d 666, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002).

The hospital's argument that there is no cause of action for gross negligence would lead to the absurd conclusion that in enacting the good samaritan law, the legislature was providing immunity for a cause of action that did not exist anyway. Tenets of statutory construction require that a statute not be interpreted in a manner

that creates an absurd result. *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 275, 811 A.2d 693 (2003); *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 101, 801 A.2d 759 (2002). No legislative enactment is to be viewed as surplusage. *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 40, 664 A.2d 719 (1995); *Rydingsword* v. *Liberty Mutual Ins. Co.*, 224 Conn. 8, 16, 615 A.2d 1032 (1992).

The court concludes that a cause of action for negligence of various degrees, including gross negligence, exists at common law and that liability for gross negligence was not abolished by the good samaritan law. The appellate courts continue to recognize that in some situations a plaintiff may demonstrate that a defendant engaged in a more blatant degree of negligence that the appellate courts refer to as gross negligence. The limits of the immunity provided in the good samaritan law justify the plaintiff's pleading of gross negligence in order to assert that the plaintiff is claiming more than the level of negligence to which the statutory immunity applies.

## CLAIMS OF RECKLESS, WANTON OR WILFUL MISCONDUCT

The hospital asserts that the allegations of the plaintiff's complaint are insufficient to state a cause of action for reckless, wanton or wilful misconduct, the claims asserted in counts thirty, sixty-three, ninety-six and 129. In each of these counts, the plaintiff has alleged that the hospital engaged in each departure from its duty to the plaintiff's decedent "intentionally and/or with knowledge of the increased risks of harm to David Glorioso from their actions."

The hospital asserts that unless a plaintiff alleges different facts with regard to a claim for wanton, wilful or reckless misconduct than for claims of negligence

in the same complaint, the plaintiff has failed to state a claim. The hospital has relied on a case arising not upon a motion to strike, but on a motion to dismiss, *Brown* v. *Branford*, 12 Conn. App. 106, 110, 529 A.2d 743 (1987), and two trial court cases that apply that ruling. In *Brown*, the Appellate Court dismissed on the ground of governmental immunity a claim that asserted that the defendant town "knowingly and intentionally" failed to provide and maintain adequate police patrols in a particular area and to investigate complaints of criminal activity in the area. The court found that the characterization of the staffing decisions as "knowing and intentional" did not alter the fact that the plaintiff was trying to recover for acts that were a matter of governmental discretion that are subject to the doctrine of governmental immunity. Id., 110–11. The core of the reasoning in *Brown* is that the nature of the acts was the same regardless of whether the plaintiff characterized the decision to devote particular efforts to policing the area at issue as negligent or "knowing."

In the present case, unlike the situation in *Brown*, there is a real difference between negligently failing to respond to a call for emergency aid and intentionally failing to do so. Read in the manner now required in assessing the adequacy of pleadings; see *Bohan* v. *Last*, supra, 236 Conn. 675; the plaintiff has alleged a conscious decision by the hospital not to respond to the call for emergency service, not to allow others at the scene to assist, and not to administer cardiopulmonary resuscitation for "an extended period of time" and other intentional withholding of needed care. These facts sufficiently state a claim of reckless, wanton or wilful misconduct.

The hospital argues that in order to state a claim for reckless, wanton or wilful misconduct, a plaintiff must allege facts that are not also pleaded in a claim of negligence. The standard of review applicable to assessing pleadings on a motion to strike does not,

however, reflect any requirement that a claim contain more or different allegations than another claim, but only that the allegations of the count challenged are legally sufficient to state a cause of action. Practice Book § 10-39. If a count sufficiently states a claim for reckless misconduct, it is not, under the standard set by the case law cited, subject to being stricken simply because another claim makes the same, or nearly the same, factual allegations.

The court finds that the allegation that the hospital and its agents intentionally engaged in the acts alleged states a cause of action for reckless, wanton or wilful misconduct.

## CONCLUSION

For the foregoing reasons, the motion to strike counts nineteen, thirty, fifty-two, sixty-three, eighty-five, ninety-six, 107, 118 and 129 is denied.