[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, John Hanrahan (Hanrahan), brought this action against the defendants, Gerard Egan, Thomas Connors and the State of Connecticut (defendants), alleging in his amended complaint dated October 29, 2001, that he was removed from his assignment to the transportation unit because of retaliation by the defendants and brings this action against all defendants for violation of his civil rights provided by the Connecticut Constitution, Article 1, § 1, 4 and 20. The defendants all filed an answer and special defenses. There were seven witnesses who testified in the case: Hanrahan, James Miller, Walter Phillips, Daniel Tamborra, Richard Miller, Thomas Connors and Gerard Egan.
 FACTS
The plaintiff claims as against all the defendants:
That the defendants retaliated against him by transferring him from the transportation van to roving security for his alleged refusal to sign a statement designed to place blame on Special Deputy James Parks concerning an incident he had been involved in with Special Deputy Steve Aquino.
The defendants also retaliated against Hanrahan by not placing him back on the transportation van for his alleged failure to help in High Sheriff Gerard Egan's 1998 campaign for High Sheriff of New London County.
He also claims that the defendants Egan and Chief Deputy Thomas Connors allegedly violated his right to due process, free speech and equal protection pursuant to the Connecticut Constitution, when he was transferred from transportation to roving security for his alleged refusal to sign a statement which was designed to place blame on Parks concerning the incident in which he was involved with Aquino.
The defenses raised are that: CT Page 3812
The defendants are entitled to the protection of sovereign immunity. Hanrahan has failed to plead and/or prove that the defendants acted in excess of their statutory authority or pursuant to an unconstitutional statute. Shea v. Rossi, 253 Conn. 134, 169 (2000).
Hanrahan failed to plead or present evidence that Egan or Connors did not have the statutory authority to reassign his job at any time without a hearing. In fact, Hanrahan so conceded on the stand and during his deposition. Hanrahan's own witness, James Miller, also conceded the same on the stand.
Defendants also claim that, to the extent that the court determines that the claims against Egan and Connors are in their individual capacity, they are entitled to the protection of statutory immunity pursuant to Connecticut General Statutes § 4-165.
Hanrahan failed to offer any evidence that his claims met any of the recognized exceptions to the statute.
No evidence was presented that Egan or Connors were not acting in furtherance of their duties or within the scope of their authority when they reassigned Hanrahan.
Furthermore, there was no evidence presented that the defendants were acting in a "wilful, wanton or reckless manner" in reassigning him. On the date Hanrahan was reassigned, so were thirteen other special deputies.
The defense also claims that Hanrahan's entire case is premised on courthouse gossip and speculation. They claim that he presented no evidence that he was reassigned for any other reason than the desire of the new transportation supervisor, Richard Miller, to have him reassigned off the transportation van due to Hanrahan's prior work history. Instead, Hanrahan presents a case, claim the defendants, based upon inadmissible hearsay revolving around a conspiracy theory that he was reassigned for not signing a statement about an incident he admits he has no firsthand knowledge of.
Hanrahan presented no credible evidence, claim the defendants, concerning his assertion that he was not reassigned back on the transportation van for not helping out on Egan's campaign. He says he was told this by Connors who, when he testified, denied that he had ever said this to Hanrahan. CT Page 3813
The court finds the following facts to be undisputed.
Hanrahan was a per diem employee of the New London County Sheriff's Department at all relevant times. He had no proprietary interest in his job in the transportation van. It was within the scope of authority of the high sheriff and the deputy high sheriff to reassign special deputies at any time without a hearing. The high sheriff had the responsibility for transporting prisoners pursuant to Connecticut General Statutes § 6-32. On January 13, 1999, Hanrahan was among thirteen special deputies reassigned to different positions within the sheriff's department. Such reassignments occurred on a regular basis. In January of 1999, Richard Miller took over as supervisor of transportation and requested that Hanrahan be reassigned off transportation due to his independent analysis of Hanrahan's work history while on the transportation van.
Hanrahan's work history included leaving a loaded gun in an unlocked van, losing so many restraints, he and his partner bought their own, allowing a Channel 8 investigative reporter into the courthouse with a weapon while he was working on the scanner, damaging a transportation van, and then failing to report the damage to his supervisor, Daniel Tamborra, failing to properly account for miles on the transportation van, as was his joint responsibility with his partner, Geri Sullivan, and finally being reprimanded for turning off the transportation van radio before being released for the day.
The defendants claim that Hanrahan has failed to prove a prima facie case of retaliation. They claim that Egan and Connors had every right to reassign Hanrahan to another job assignment within the New London County Sheriff's Department without a hearing.
Hanrahan, they claim, presented no evidence to contest the testimony of Richard Miller that he requested Hanrahan to be taken off the van when he became supervisor of transportation. There was no testimony, no evidence or submission. However, Hanrahan did testify that Egan and Connors reassigned him for other reasons, specifically in retaliation for his refusal to sign a false statement for Tamborra and because he did not support Egan's election campaign. He said Connors told him about the failure to support Egan and that that was why he was reassigned. However, Connors, when he testified, denied he ever said that. As far as his conclusion that he was reassigned because of his failure to sign the statement for Tamborra, there was no testimony as to that other than that of the plaintiff who made such an assertion on his own based upon his own conclusions as to Tamborra's reactions to his failure to sign the statement for him. There was no other testimony or evidentiary submission CT Page 3814 to support this assertion.
 DISCUSSION
The defendants claim that they are entitled to the protection of sovereign immunity because Hanrahan failed to prove that Egan and Connors were acting in excess of their statutory authority.
As Hanrahan brought his action against Egan and Connors as members of a state agency (sheriff's department) and designated them by their titles, this action against them is in their official capacities. Shea v. Rossi,253 Conn. 168. As such, they are entitled to the protection of sovereign immunity unless Hanrahan can prove that as state officials, they acted pursuant to an unconstitutional statute or in excess of their statutory authority. The test to be employed by the court is as follows:
That the defendant's misuse of his authority was personal to him and not primarily employer rooted or reasonably incidental to the performance of employment duties . . . The defendant's alleged conduct was not designated to serve any legitimate state interest. Rather, the defendant's alleged actions were motivated by purely personal considerations entirely extraneous to his employer's interests.
Martin v. Brady, 261 Conn. 372, 378 (2002) (quoting Antinerella v.Rioux, 229 Conn. 499 (2002)).
Hanrahan admitted that Egan and Connors could reassign him at any time without a hearing. All the witnesses testified, including Hanrahan, that Connors and Egan had the ability to change job assignments at any time without a hearing.
Hanrahan failed to prove that his reassignment was "solely" to further an illegal scheme and not to carry out any legitimate interest. Pursuant to the Shea v. Rossi case, supra, for Hanrahan to prove that Egan and Connors were acting in excess of their statutory authority, Hanrahan had a heavy evidentiary burden of proving that they reassigned him solely to further an illegal scheme or to justify their own prior unjustified conduct. In addition, the plaintiff had the obligation to establish that the reassignment was "not for any legitimate state interest." The defense claims that Hanrahan failed to satisfy this evidentiary burden.
Hanrahan presented no evidence that Tamborra's investigation of the Parks/Aquino incident had anything to do with his reassignment. He testified that he had never read James Miller's initial report of the incident or the supplement report done by Tamborra. He never spoke to CT Page 3815 Egan, Connors or Tamborra concerning the incident. Accordingly, the defendants' claim that there was no evidence other than pure speculation on the part of Hanrahan that his refusal to sign the questions posed to him by Tamborra had anything to do with his reassignment.
He also presented no evidence to support his claim that he was retaliated against for not helping out on Egan's campaign. He said that Connors told him that that was the reason why he had been transferred, however, Connors denied such statement.
Hanrahan also failed to provide any evidence which would meet any recognized exception to Connecticut General Statutes § 4-165.[1]Martin v. Brady, supra, 277-80. The evidence has shown that Egan and Connors had the authority to change Hanrahan's job assignment without a hearing. Thus, they were acting within the scope of their statutory authority. Hanrahan produced no evidence that his reassignment was due to any "wilful, wanton or reckless" behavior on the part of Egan and/or Connors. The evidence simply disclosed that Richard Miller took over transportation and requested to have Hanrahan removed due to his independent perception of Hanrahan's work history on the van.
Hanrahan's claim of equal protection under Article 1, § 20 of the Connecticut State Constitution fails because he offered no evidence that he was treated differently from any other situated employee. He claims he was discriminated against and his right to equal protection was violated when he was reassigned to a different job assignment on January 13, 1999. There is no proof that Hanrahan was treated differently than other similarly situated employees based upon some impermissible criteria. The equal protection clause does not require absolute equality or precisely equal advantages. State v. Morales, 240 Conn. 727 (1997).
Article 1, § 20 of the Connecticut Constitution reads:
No person shall be denied equal protection under the law nor be subject to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin.
State v. Anonymous, 29 Conn. Sup. 333, 335 (1972); Golub v. NewBritain, 205 Conn. 17, 25 (1987). In addition to the prima facie requirement of proof that one was treated differently than other similarly situated persons, a plaintiff must establish intentional and purposeful discrimination. Wendt v. Wendt, 59 Conn. App. 656,685 (2000). CT Page 3816
The defendants also claim that Hanrahan's due process allegation is meritless because his claim that his reassignment denied him due process under the Connecticut Constitution warrants little consideration. He admitted he had no proprietary right to exclusively work on transportation and that he could be reassigned without a hearing. This is not a termination case and, regardless of his own desires, he cannot mandate what position he is to work while a member of the sheriff's department.
The court agrees with the position of the defendants and disagrees with that of the plaintiff. The plaintiff claims he was taken off the transportation unit as a retaliatory measure for refusing to sign an official statement at the request of Tamborra and also because he refused to support the campaign of Gerard Egan. The court finds that neither of these allegations was proven. Connors specifically denied that he ever told Hanrahan that he lost his transportation job because of his refusal to support Egan's campaign. Also, as far as Tamborra is concerned, he denied that he retaliated against him for the reasons stated by Hanrahan.
On the other hand, the defendants have stated several reasons which appear to be legitimate for taking Hanrahan off the transportation unit. They were stated by Richard Miller as the performance of Hanrahan in the past with respect to keeping guns in the van in an improper manner, failure to accurately report mileage, causing damage to the van and failing to report it to Tamborra and turning off of the radio without proper authorization. The court finds that the reasons given by the defendants are not pretextual, but are actual legitimate reasons for taking Hanrahan off the transportation unit.
 CONCLUSION
The court finds that Hanrahan had no proprietary right to work in transportation exclusively. Egan and Connors had the right to reassign him without a hearing; and finally, Hanrahan produced no evidence to prove any causal connection between his reassignment and his alleged refusal to sign any statement or failure to support Egan's election campaign.
Accordingly, judgment must enter for all of the defendants in this case.
 D. Michael Hurley Judge Trial Referee