NANCY C. HAYES *v.* BRUCE S. BERESFORD

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 8—decision released July 7, 1981

*John J. Graubard,* with whom, on the brief, was *Myra L. Graubard,* for the appellant (defendant).

*Warren P. Joblin,* for the appellee (plaintiff).

PETERS, J. This appeal arises out of two different provisions of a separation agreement. In the first suit (the family division action), the plaintiff Nancy C. Hayes sued the defendant Bruce S. Beresford in order to have the support payments of the separation agreement modified. In the second suit (the civil division action), the plaintiff sued the defendant in order to collect arrearages alleged to be due and unpaid under the terms of the separation agreement. The two cases were, by stipulation, heard together in the trial court. That court rendered judgment for the plaintiff in both cases, and the defendant has appealed.

The underlying facts are undisputed. The parties were married in 1962. They had two children, one born in 1962 and one born in 1966. In 1970, the parties began to live apart from each other, and on July 1, 1970, they executed the separation agreement which is central to the present litigation. The plaintiff obtained a divorce in Mexico on July 14, 1970. The Mexican divorce decree incorporated the separation agreement by reference to give that agreement the same full legal force and effect as if it had been recited in full in the judgment. Both of

the parties have since remarried. Private school education for both of the parties' children is desirable; for the older child, who is dyslexic, it is required.

## I

The modification action (the family division action) was brought pursuant to paragraph fifteenth of the separation agreement executed on July 1, 1970. That paragraph provides: "If there shall be a substantial change in circumstances, either party may make application to the Superior Court for Fairfield County, or other court of competent jurisdiction, for a modification of the alimony and support payments. The decision of such court shall supersede the terms and conditions of this agreement and shall bind the parties thereto." The complaint alleged a substantial change of circumstances arising out of the older child's need, because of his dyslexia, to have special education at a private secondary school. It sought an order requiring the defendant to pay these educational expenses. The defendant, citing his conceded responsibility to pay his son's college expenses under paragraph eleventh of the agreement,[1] argued

[1] Paragraph eleventh of the separation agreement provides: "ELEVENTH: It is the desire of both parties that all their children receive good educations. In furtherance of this wish the Husband agrees to assume the primary responsibility of paying for college educations for each child at private institutions commensurate with each child's ability. Payment shall be made directly to the colleges and shall include the cost of tuition, room and board, books and other required fees for such child. In addition the Husband will pay the reasonable cost of transportation in connection with attendance at such colleges. The Husband agrees to maintain a Five Thousand (5,000) Dollar 15 year endowment life insurance policy for the benefit of his son, BRUCE S. BERESFORD, JR. and a Five Thousand (5,000) Dollar 15 year endowment life insurance policy for

that payment of secondary school expenses would create a financial hardship for him. He urged the court to consider that his salary of $68,500 supported not only his own children but also his stepchildren from his remarriage. The defendant also maintained that the separation agreement was invalid and unenforceable.

The trial court found that the defendant's obligation to pay for his son's private secondary schooling was enforceable as ancillary to his obligation to pay college education expenses, and that the defendant was financially able to bear this burden. The court relied on General Statutes § 46b-66 permitting written agreements for the care, education, maintenance or support of a child beyond the age of eighteen. The court emphasized that its judgment for the plaintiff was premised on the fact that "[t]his is not an action on a decree, but an action on a pre-divorce contract."

The defendant's appeal from this judgment, although it also contests the trial court's fact-bound conclusion that there had been an unforeseen substantial change of circumstances, is principally based on the proposition that the trial court lacked subject matter jurisdiction to entertain this cause of action. Although it is not clear that this argument was fully brought to the attention of the trial court, this court addresses jurisdictional questions as they arise. *East Side Civic Assn.* v. *Planning*

---

the benefit of his daughter, NINA HOWELL BERESFORD, for the purpose of helping pay for their college education. Any excess value from each policy not required for the child's college education shall revert to the Husband when the child completes college or sooner terminates his or her college experience.

"In addition the Husband will pay a reasonable amount for summer tutoring of his son until the son reaches ninth grade."

*& Zoning Commission,* 161 Conn. 558, 559–60, 290 A.2d 348 (1971); *Tellier* v. *Zarnowski,* 157 Conn. 370, 373, 254 A.2d 568 (1969); *Carten* v. *Carten,* 153 Conn. 603, 610, 219 A.2d 711 (1966); Maltbie, Conn. App. Proc. § 273.

The jurisdictional difficulty with the modification case derives from the fact that the complaint requests judicial action to modify a private agreement. It is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement. *Lenge* v. *Goldfarb,* 169 Conn. 218, 222–23, 363 A.2d 110 (1975); *Samson* v. *Bergin,* 138 Conn. 306, 309, 84 A.2d 273 (1951); *Sainz* v. *Sainz,* 36 N.C. App. 744, 747, 245 S.E.2d 372 (1978); James & Hazard, Civil Procedure (2d Ed. 1977) § 12.20, p. 644. Private parties may empower an arbitrator to modify their agreement; James & Hazard, supra, § 12.21, p. 645; but they cannot confer that power on a court.

This jurisdictional difficulty is not cured by the incorporation of the separation agreement into the Mexican divorce decree. If the suit is on the agreement, the jurisdictional problem is not surmounted. If the suit is on the decree, as this suit was not, the moving party would first have to establish that decree in some fashion as a Connecticut judgment. See *Krueger* v. *Krueger,* 179 Conn. 488, 489, 427 A.2d 400 (1980); *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 544, 295 A.2d 519 (1972). Furthermore, it would be essential to establish the extent to which the Mexican decree was modifiable under Mexican law. See *Krueger* v. *Krueger,* supra, 491–93.

The plaintiff now argues that the jurisdictional difficulty is cured because General Statutes §§ 46b-61

and 46b-84[2] confer statutory jurisdiction upon the Superior Court to enter support orders for the support of minor children. This is not, however, the basis upon which the trial court either was asked to act, or did act. The complaint relies solely on the separation agreement, and the court's memorandum of decision echoes the contractual nature of the complaint. The plaintiff cannot at this late date convert a contractual into a statutory cause of action.

---

[2] These sections provide: "[General Statutes] Sec. 46b-61. (Formerly Sec. 46-62). ORDERS RE CHILDREN WHERE PARENTS LIVE SEPARATELY. In all cases in which the parents of a minor child live separately, the superior court for the judicial district where the parties or one of them resides may, on the complaint of either party and after notice given to the other, make any order as to the custody, care, education, visitation and support of any minor child of the parties, subject to the provisions of sections 46b-54, 46b-56, 46b-57 and 46b-66."

"[General Statutes] Sec. 46b-84. (Formerly Sec. 46-57). PARENTS' OBLIGATION FOR MAINTENANCE OF MINOR CHILD. (a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. (b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. (c) After the granting of a decree annulling or dissolving the marriage or ordering a legal separation, and upon complaint or motion with order and summons made to the superior court by either parent or by the commissioner of administrative services in any case arising under subsection (a) of this section, the court shall inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just, and may direct security to be given therefor."

Because the trial court lacked jurisdiction to modify the separation agreement between the parties, its judgment on that cause of action (the family division action) was in error. In the case denominated 0175160 at trial, and 10419 on this appeal, the judgment rendered must be set aside.

## II

The action to recover arrearages (the civil division action) was brought pursuant to paragraph eighth (a) of the separation agreement executed on July 1, 1970. That paragraph provides: "If the Husband's annual salary and bonuses exceed Twenty Thousand (20,000) Dollars per year the Husband will pay seven and one-half (7½) per cent of the excess to the Wife for the additional support and maintenance of each child until such child reaches the age of twenty-three (23) years or sooner marries or otherwise becomes emancipated, such additional support to be added to the monthly support due for each child as hereinbefore provided." The parties have stipulated that if this provision is enforceable, the plaintiff is entitled to recover $34,528, as well as $6,600 interest plus costs.

The defendant interposed two defenses to this suit for recovery under the separation agreement. The first defense is that the plaintiff's suit is barred by the statute of limitations. The second defense is that the separation agreement itself is void and unenforceable as contrary to the public policy of the state of Connecticut. The trial court considered each of these defenses and found neither to be persuasive. We agree.

The provision of the statute of limitations upon which the defendant relies is General Statutes

§ 52-576, which requires actions "for an account . . . or on any simple or implied contract, or upon any contract in writing, [to be] brought . . . within six years next after the right of action accrues . . . ." This provision now applies even to contracts under seal. At the time of this agreement, however, General Statutes § 52-573 provided a seventeen-year period during which contracts under seal might be enforced. Although § 52-573 was repealed effective October 1, 1971, the trial court held that the repealer, because it affected substantive rights, could not limit the time period for suit under a contract executed in 1970. The defendant does not, on this appeal, take issue with the trial court's conclusion of law, but rather contests its factual finding that the separation agreement was a contract under seal.

The separation agreement includes the signatures of the parties, followed in each case by the initials "L.S." Their subscription recites that the parties have "hereunto set their hands and seals." Their signatures are followed by two attestations, one by a commissioner of the Superior Court, and one by a notary public, each reciting the personal appearance of the "signer and sealer of the foregoing instrument." This agreement was introduced as Exhibit A during the trial. The parties introduced no other evidence at trial to show that they intended the agreement to be under seal.

The evidence derived from the separation agreement itself was ample to support a finding that the parties intended to execute a sealed instrument. *Beach* v. *Beach,* 141 Conn. 583, 593–94, 107 A.2d 629 (1954); *Caputo* v. *DiLoretto,* 110 Conn. 413, 415–16, 148 A. 367 (1930). Certainly the trial court's finding of fact in this regard is not clearly errone-

ous. *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 182 Conn. 217, 221–22, 435 A.2d 24 (1980). The statute of limitations therefore presents no impediment to the plaintiff's suit.

The defendant's claim that the separation agreement violates public policy rests largely on *Rifkin* v. *Rifkin,* 155 Conn. 7, 229 A.2d 358 (1967). It is true that *Rifkin* held unenforceable a separation agreement whose execution, in October, 1951, led to out-of-state divorce proceedings in February, 1952. The agreement there was not examined, approved or adopted by the court that granted the divorce decree. On those facts, the trial court in *Rifkin* found the agreement to have been made not for the legitimate purpose of amicably settling property affairs but rather for the illicit purpose of facilitating a quick out-of-state divorce. In sustaining the conclusion of the trial court, this court cited with approval, at pp. 9–10, a number of Connecticut cases, including *Maisch* v. *Maisch,* 87 Conn. 377, 383, 87 A. 729 (1913), wherein separation agreements had been upheld as valid property settlements when their terms had been fully disclosed to the courts granting the divorce decrees.

Although in this case, as in *Rifkin,* divorce in a foreign jurisdiction rapidly followed execution of a separation agreement,[3] in two salient respects the cases are distinguishable. In this case, the court granting the divorce decree adopted, approved, and incorporated the separation agreement into its judgment of divorce. In this case, the trial court found that the parties had, independently of the separation agreement, determined to pursue disso-

---

[3] The separation agreement was executed on July 1, 1970, and the plaintiff obtained a Mexican divorce decree on July 14, 1970.

lution of their marriage, so that the agreement was not in fact made to facilitate divorce but was intended, as in *Maisch* v. *Maisch,* supra, solely as an amicable settlement of their property interests. On these facts, *Rifkin* v. *Rifkin* does not apply.

The ambit of holdings such as *Rifkin* v. *Rifkin* has been circumscribed by the change in attitudes toward dissolution of marriage. The legislature has authorized the termination of a marital relationship upon a judicial determination of its irretrievable breakdown without regard to the fault of either marital partner. General Statutes § 46b-40 (c); *Joy* v. *Joy,* 178 Conn. 254, 255–56, 423 A.2d 895 (1979). Because of the greater tolerance of divorces everywhere, out-of-state divorces are both less likely and less opprobrious. Viewed against this background, we should not lightly overturn a finding of fact by a trial court that the parties had intended to channel the dissolution of their marriage in a legitimate rather than in an illegitimate fashion. Furthermore, we must recognize that vindication of the public interest in honorable separation agreements cannot be attained by a judicial inquiry that focuses narrowly on the purpose for which separation agreements are negotiated. It is self-evident that most separation agreements occur in the context of the initiation of divorce proceedings. The temporal proximity of agreement to divorce does not, in and of itself, evidence an improper inducement of an undesirable agreement.

The safeguard for the public policy against collusive separation agreements rests in the process by which separation agreements are incorporated into decrees of dissolution of marriage. Under our statutes, a court has an affirmative obligation, in

divorce proceedings, to determine whether a settlement agreement is "fair and equitable under all the circumstances." General Statutes § 46b-66. The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantively fair and has been knowingly negotiated. *Monroe* v. *Monroe,* 177 Conn. 173, 183–84, 413 A.2d 819, cert. denied, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). With such judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. *Guyton* v. *Guyton,* 17 Ill. 2d 439, 444, 161 N.E.2d 832 (1959); *Paxton* v. *Paxton,* 201 Neb. 545, 547, 270 N.W.2d 900 (1978); *Viles* v. *Viles,* 14 N.Y.2d 365, 368–69, 251 N.Y.S.2d 672, 200 N.E.2d 567 (1964) (dissenting opinion); Lindey, Separation Agreements and Ante-Nuptial Contracts (2d Rev. Ed. 1978) p. 3-23. Certainly public policy does not require nonenforcement of arrearages long overdue under a separation agreement on which both parties have relied for more than ten years.

The trial court was therefore correct in its judgment awarding the plaintiff payment of $34,528, interest of $6,600 and costs in her action (the civil division action) to enforce paragraph eighth (a) of the separation agreement. In the case denominated 0175161 at trial, and 10420 on this appeal, the judgment rendered must be affirmed.

There is error in the first case, the judgment is set aside and judgment is to be rendered for the defendant; there is no error in the second case.

In this opinion the other judges concurred.