MARY GODBY VAN WAGNER *v.* HARRY
DAVIS VAN WAGNER
(2288)

DANNEHY, C.P.J., HULL and DUPONT, Js.

Argued January 12—decision released April 24, 1984

*Sanford J. Plepler,* for the appellant (defendant).

*Thomas C. White,* for the appellee (plaintiff).

DUPONT, J. This case concerns the enforceability in Connecticut of an out-of-state contempt order. The plaintiff's action was brought pursuant to General Statutes § 46b-70 et seq.[1]

---

[1] "ENFORCEMENT OF FOREIGN MATRIMONIAL JUDGMENTS

"[General Statutes] Sec. 46b-70. FOREIGN MATRIMONIAL JUDGMENT DEFINED. As used in sections 46b-70 to 46b-75, inclusive, 'foreign matrimonial judgment' means any judgment, decree or order of a court of any state in the United States in an action for divorce, legal separation, annulment or dissolution of marriage, for the custody, care, education, visitation, maintenance or support of children or for alimony, support or the

The facts are not in dispute. The marriage of the parties was dissolved in the state of Georgia in 1970. A separation agreement, incorporated in the judgment, provided for payment by the defendant husband of the expenses of a minor child until age twenty-one, and of his expenses while attending college until age twenty-two, unless he had sooner graduated from college. The plaintiff sought, by her action in Connecticut, to enforce the original judgment as well as a 1978 contempt order of the Georgia court. That order required the defendant to pay for the college expenses of his son for the 1978 Fall quarter and to pay for each quarter thereafter as required by the original judgment. The Connecticut trial court granted the defendant's motion to dismiss the plaintiff's contempt proceeding insofar as it related to the 1970 judgment.[2] The plaintiff's motion

disposition of property of the parties to an existing or terminated marriage, in which both parties have entered an appearance.

"[General Statutes] Sec. 46b-71. FILING OF FOREIGN MATRIMONIAL JUDGMENT; ENFORCEMENT IN THIS STATE. (a) Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final, has not been modified, altered, amended, set aside or vacated and that the enforcement of such judgment has not been stayed or suspended, and such certificate shall set forth the full name and last-known address of the other party to such judgment. (b) Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, amending, vacating, setting aside, staying or suspending said judgment as a judgment of a court of this state; provided, in modifying, altering, amending, setting aside, vacating, staying or suspending any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling."

[2] The trial court found that the defendant had not filed an appearance in connection with the 1970 judgment and that, therefore, it had no jurisdiction to enforce it under General Statutes § 46b-70. The plaintiff has not appealed from that portion of the court's judgment.

for contempt, relating to the Georgia court's 1978 contempt order, was granted pursuant to General Statutes § 46b-70 et seq., the court having found that the defendant had appeared in that proceeding in Georgia and that Connecticut public policy after 1977 did not prohibit the enforcement of the order.

On appeal,[3] the defendant claims error in the trial court's effectuation of the 1978 contempt order, claiming that Connecticut public policy retroactively prohibits the enforcement of orders involving children over the age of eighteen even if the orders were consonant with our public policy when rendered. The defendant further argues that the 1978 contempt order of Georgia could only be enforced if the decree upon which the order was based was found to be enforceable.

Cases are judicial building blocks. In order to determine if Connecticut courts may enforce the valid contempt orders of other states, relating to child support orders entered pursuant to written agreements for support after eighteen years of age and incorporated into dissolution decrees, a review of relevant prior decisions and statutes is necessary.

In 1970, the date of the dissolution of the marriage of the parties, support orders for children to age twenty-one were not violative of any statute and were common in Connecticut. On and after October 1, 1972, however, the age of majority in Connecticut became eighteen years.[4]

---

[3] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c). The defendant appealed from "that part of Memorandum of Decision" finding the defendant in contempt relative to the 1978 order. An appeal from a memorandum of decision rather than from a judgment is subject to dismissal. *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 348 A.2d 651 (1974). The plaintiff, however, by failing to move to dismiss the appeal, has waived the defect.

[4] General Statutes § 1-1d provides as follows: " 'MINOR,' 'INFANT,' 'INFANCY,' 'AGE OF MAJORITY,' DEFINED. Except as otherwise provided by

After that date, support orders for "minor children" terminated as a matter of law upon the attainment of age eighteen. *Simon* v. *Simon,* 170 Conn. 24, 363 A.2d 1054 (1975); *Sillman* v. *Sillman,* 168 Conn. 144, 358 A.2d 150 (1975). Furthermore, orders requiring support for children over eighteen years of age, entered pursuant to separation agreements incorporated within the dissolution (divorce) decree were also unenforceable by contempt proceedings. *Kennedy* v. *Kennedy,* 177 Conn. 47, 411 A.2d 25 (1979). This was so regardless of whether the order for such payment was originally rendered prior to the passage of the legislation reducing the age of majority and was sought to be enforced after the passage of legislation providing for the incorporation into an order or decree of the court of an agreement for maintenance or support extending beyond age eighteen.[5] *Hunter* v. *Hunter,* 177 Conn. 327, 416 A.2d 1201 (1979). That case held that General Statutes § 46b-66, as amended, could not be applied to "save" agreements incorporated into dissolution judgments which provided for support of children beyond the age of majority since statutes which increase liability are substantive and, therefore, may not be retroactive. The court noted that the amendment became effective six months after the child in question had reached age eighteen.

---

statute, on and after October 1, 1972, the terms 'minor,' 'infant' and 'infancy' shall be deemed to refer to a person under the age of eighteen years and any person eighteen years of age or over shall be an adult for all purposes whatsoever and have the same legal capacity, rights, powers, privileges, duties, liabilities and responsibilities as persons heretofore had at twenty-one years of age, and 'age of majority' shall be deemed to be eighteen years."

[5] General Statutes § 46b-66, effective as of October 1, 1977, amended General Statutes § 46-49 as follows: "If the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

From 1970 to at least the date of the contempt order of the Georgia court in 1978, Georgia law allowed and enforced court decrees which provided for child support to age twenty-one. *McClain* v. *McClain,* 235 Ga. 659, 221 S.E.2d 561 (1975); *Choquette* v. *Choquette,* 232 Ga. 759, 208 S.E.2d 848 (1974).

The issue of the present case is whether "public policy," as those words are used in General Statutes § 46b-71 (b), is contravened by the enforcement of the Georgia contempt order. After October 1, 1977, the courts of Connecticut, by statute, are allowed, prospectively, to enforce orders requiring support of children over eighteen years old when an agreement of the parties to that effect has been incorporated in the dissolution judgment. The *Hunter* case, however, prohibits such enforcement, retroactively, when the agreement has been incorporated into a Connecticut decree. To apply General Statutes § 46b-66 retroactively would be to increase a liability not otherwise extant for Connecticut citizens. To enforce the law of another state which does not change the liability of its citizens, however, does not change the substantive rights of those who, while residents of that state, incurred the liability of support for children over eighteen years old by written agreement incorporated into a dissolution decree.[6]

Public policy is akin to the public good or the public welfare. It varies as the interests and goals of society are modified. *Hayes* v. *Beresford,* 184 Conn. 558, 566–67, 440 A.2d 224 (1981). The purpose of General Statutes § 46b-70 et seq. is to enforce matrimonial judgments in order to achieve a uniformity of law, without having that purpose frustrated by the courts. See

---

[6] The trial court noted that although the defendant had not appeared in the original action for dissolution of marriage, the separation agreement incorporated in the decree was signed by the defendant, provided for such incorporation in the decree, and contained the caption and number of the pending Georgia action.

*Walzer* v. *Walzer,* 173 Conn. 62, 376 A.2d 414 (1977). A mobile interstate populace is a societal fact of life in every state. Stability in the status of children as beneficiaries of support agreements should be preserved when consistent with the varying laws of our states. At least one recent Connecticut Supreme Court decision involving the same statute as that involved in the present case, General Statutes § 46b-71, held that child support payments may be modified beyond the terms of a separation agreement incorporated into a dissolution decree. *Burton* v. *Burton,* 189 Conn. 129, 454 A.2d 1282 (1983). Although the court did not expressly rule on the issue of the present case, it, sub silentio, approved a separation agreement incorporated in a 1974 decree of New York state which provided for maintenance of children until age twenty-one, in an action instituted in 1980. In another recent case, the court held that a suit could be brought on a separation agreement to collect arrearages for the expenses for the support of children until the age of twenty-three years. *Hayes* v. *Beresford,* supra. A 1970 Mexican divorce decree incorporated the agreement. A defense of the defendant husband was that the agreement was unenforceable because it was contrary to the public policy of Connecticut in that the purpose of its execution was to facilitate a quick out-of-state divorce. The court did not specifically rule on whether the public policy of Connecticut prohibits retroactive enforcement of foreign judgments which incorporate postmajority child support agreements. The court did hold, however, that the defendant must pay the arrearages due in an action brought on the agreement.

Connecticut public policy does not prohibit the enforcement of a foreign contempt order, requiring a defendant to pay for support of a child beyond the age of eighteen years pursuant to an agreement which is incorporated in a dissolution decree executed in another

state and which agreement, as to support payments, is consonant with the laws of that state both as of the date of the dissolution and as of the date of the contempt order. The original decree was obviously enforceable in Georgia and was, in fact, enforced by the Georgia contempt order. The fact that the Connecticut trial court found the original judgment to be unenforceable in Connecticut as it related to repayment for expenses which might have been due under it, does not alter the rectitude of the decision to enforce the contempt order.

There is no error.

In this opinion the other judges concurred.