[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to the court via a rather unusual procedure. The defendant has moved to dismiss on subject matter jurisdictional grounds, C.P.B. Section 145, the plaintiff's complaint for dissolution of marriage asserting that the parties were legally divorced in Mexico on July 4, 1967. The defendant supported his motion with an affidavit and other documentary evidence relating to facts not apparent on the record, C.P.B. Section 143. The defendant requested an evidentiary hearing to further support the motion which was granted in the belief that such evidence was necessary and appropriate to the court's determination of the issues. Bruneau v. Bruneau, 3 Conn., 453, 454, n. 1; C.P.B. Section 211(4).
Most of the evidence related to the validity of the bilateral Mexican divorce and called into question: a) whether the defendant had established requisite jurisdictional domicile by physically appearing in the Mexican court where the plaintiff who was the ostensible petitioner therein appeared only through counsel, CT Page 8562 Litvaitis v. Litvaitis, 162 Conn. 540, 546, and b.) whether the power of attorney which the plaintiff purported to execute and acknowledge on June 23, 1967 effectively appointed Mexican attorney Luis Trias to represent her in the proceeding as recited in the decree.
During oral argument the court sought counsel's guidance concerning the procedure which it should follow in its inquiry. One view is that the court should engage in a two step approach. First, the court should determine the validity of the divorce; second, if the divorce is found to be invalid it should apply the doctrine of practical recognition, if appropriate. The plaintiff urges the court to reject the Mexican divorce and not to reach the question of practical recognition on the grounds that the doctrine is not available to one who initiates an invalid Mexican divorce. Apparently, the plaintiff reasons that the defendant did not do equity when he failed to satisfy the Connecticut requirement that he intend to remain in Mexico permanently. Litvaitis v. Litvaitis, supra, at 546. Such a position does not accord with the Appellate Court's decision in Bruneau wherein the facts were identical in this respect. Additionally, out of state divorces in general are less opprobrious than they used to be. Hayes v. Beresford, 184 Conn. 558, 562.
As this court reads Bruneau, the doctrine of practical recognition is a rule of preclusion rather than a rule of resort. "A party may be precluded from attacking a foreign divorce decree if such an attack would be inequitable under the circumstances", Id. at 457. Thus a trial court is constrained to apply the rule to determine from the particular circumstances of the case whether a person should be forestalled from attacking an otherwise invalid foreign divorce decree. This is the procedure which this court deems appropriate and so the inquiry turns now to the circumstances of the case.
The beginning point is the rule stated in Bruneau that "if one party has accepted benefits under the original decree or waited an unreasonably long time before attacking it, an invalid decree will be held immune from attack, particularly if the other party has remarried in the meantime", Id. at 458 (emphasis supplied). Here, as in Bruneau, the defendant obtained the Mexican divorce. In reliance on that decree he remarried on July 27, 1967 in a ceremony in South Salem, New York. He notified the plaintiff of this fact within 10 days thereafter although the plaintiff professes to have no knowledge of the event at the time. The defendant testified that he has based the past 23 years of his life on the existence of the divorce citing joint ownership with his wife of a home in Fairfield, Connecticut and a condominium in Fort Lauderdale, Florida. The defendant has also made a will and prepared an estate plan in reliance on the belief that his CT Page 8563 present wife is in fact his lawful wife. The couple has been generally recognized in the community as married to one another for many years. The defendant described certain serious medical needs of each spouse and referred to the importance of their quiet life together in mutual support and assistance.
The plaintiff brought this action some 23 years after the divorce and the defendant's remarriage because she was unable successfully to renegotiate the terms of the separation agreement which had been incorporated into the decree. She claims that the defendant failed to do equity in 1967 because he failed to disclose his assets to the Mexican court. There is no evidence of any willful nondisclosure.
By its terms the separation agreement was based on a trust agreement and required the defendant to discharge certain obligations to the plaintiff including delivery and maintenance of an automobile, exclusive possession of the marital residence with payment of carrying charges thereon for life and maintenance of life insurance of which the plaintiff was beneficiary. In 1969 the trust was amended to require the defendant to pay the plaintiff's income tax in the event she experienced a shortfall. In 1971 the trust was further amended so as to substitute the $5500 cash value of the life insurance policy for the policy itself and quantified the income tax payments previously agreed to. In addition, the defendant paid regular periodic alimony to the plaintiff dating back to 1967. Thus, the combination of 23 years duration, the unequivocal acceptance of benefits by the plaintiff as a former spouse and the enormous change in the defendant's life in reliance on the decree estops the plaintiff from attacking its validity.
The plaintiff argues that unlike the plaintiff in Bruneau she as no contractual remedy because the defendant has not defaulted in his financial obligations. Rather she complains that 23 years has produced a substantial change in circumstances which would warrant modification of a domestic divorce decree but which cannot be addressed when the financial orders are part of the decree of a foreign country. Hayes v. Beresford, supra at 562. While it is true that Section 46b-70 does not expressly include this type of decree within the definition of "foreign matrimonial judgement", authority exists for such action under the principle of comity Hayes v. Beresford, supra at 562; Walzer v. Walzer 173 Conn. 62. As a practical matter, the distinction between comity and the constitutional mandate of full faith and credit has become almost imperceptible, 2 Clark, The Law of Domestic Relations In The United States 316.
For the foregoing reasons the motion to dismiss is granted. CT Page 8564
MOTTOLESE, J.