******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NANCY BURTON *v.* CONNECTICUT SITING
COUNCIL ET AL.
(AC 36799)

Gruendel, Alvord and Mullins, Js.

*Argued September 11—officially released November 17, 2015*

(Appeal from Superior Court, judicial district of New
Britain, Hon. Joseph M. Shortall, judge trial referee.)

*Nancy Burton*, self-represented, the appellant
(plaintiff).

*Robert L. Marconi*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general, for the appellee (named defendant).

*Bradford S. Babbitt*, with whom, on the brief, was
*Kenneth C. Baldwin*, for the appellee (defendant
Dominion Nuclear Connecticut, Inc.).

*Opinion*

GRUENDEL, J. The self-represented plaintiff, Nancy Burton, appeals from the judgment of the Superior Court dismissing, for lack of subject matter jurisdiction, her administrative appeal from a decision of the named defendant, the Connecticut Siting Council (council). The dispositive issue is whether the plaintiff had standing to pursue that appeal. We affirm the judgment of the Superior Court.[1]

This case concerns the construction of an independent fuel storage facility (facility) for spent nuclear fuel at the Millstone Nuclear Power Station in Waterford (Millstone) by the defendant Dominion Nuclear Connecticut, Inc. (Dominion). In 2003, Dominion filed an application with the council for a certificate of environmental compatibility and public need in order to construct a dry storage facility pursuant to General Statutes § 16-50k. *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 61, 942 A.2d 345 (2008). At that time, Millstone utilized "wet storage to store both spent fuel and all the fuel in a reactor core in the event of the need for refueling, maintenance or emergency measures . . . ." Id. Due to "dwindling space in the wet storage facilities," Dominion submitted that the construction of a "dry storage facility was necessary to compensate" therefor. Id.

In 2004, the council approved Dominion's application to complete all subsurface infrastructure work to accommodate 135 horizontal storage modules (modules) on the Millstone site. In addition, the council permitted Dominion to construct a concrete pad large enough to accommodate the installation of forty-nine modules. The council ordered Dominion to install those modules "in numeric order as identified in the record . . . ." The council's approval also provided that Dominion could petition for permission to install additional modules in the future. Two parties who intervened in that proceeding pursuant to General Statutes (Rev. to 2011) § 22a-19 (a),[2] including the plaintiff, appealed that decision to the Superior Court, which ultimately dismissed the appeal. *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, supra, 286 Conn. 65. Our Supreme Court affirmed that judgment on appeal. Id., 88.

On October 31, 2012, Dominion filed an application for "certain modifications to the existing [facility] and . . . to install all remaining concrete pads to accommodate the full build-out of 135 [modules]." Significantly, Dominion did not seek approval to install any additional modules as part of this application, a distinction the council specifically noted in its findings of fact.

The plaintiff intervened in that administrative proceeding pursuant to § 22a-19 (a) and thereafter participated through the submission of interrogatories, direct

testimony, cross-examination, and the introduction of various exhibits and motions. The council held a public hearing over the course of two days, conducted a site visit, and solicited comments from state agencies and nearby municipalities. In its May 2, 2013 decision, the council found that the proposed activity "would have no effect on wetlands or watercourses" and "would not significantly increase stormwater run-off from the site and no modifications to stormwater discharge structures would be required." The council noted that the facility was not within a flood hazard area and that "[n]o vegetation or habitats would be directly affected, as all modifications would be within previously disturbed and currently industrially maintained areas. The project would not affect any State or federally endangered, threatened, or special concern species." The council also found that "[t]he project is consistent with the provisions of the Connecticut Environmental Protection Act [(CEPA), General Statutes § 22a-14 et seq.], as it will not have the effect of unreasonably polluting, impairing, or destroying the public trust in the air, water or other natural resources of the state." It thus concluded that "the effects associated with the modification of the existing [facility], including the effects on the natural environment; ecological integrity and balance; public health and safety; scenic, historic, and recreational values; forests and parks; air and water purity; and fish and wildlife are not disproportionate either alone or cumulatively with other effects when compared to need, are not in conflict with the policies of the state concerning such effects, and not sufficient reason to deny this application to amend and modify" its prior approval of the facility. Accordingly, the council approved Dominion's application and ordered in relevant part that "[t]he Certificate Holder shall install a concrete pad large enough to accommodate 135 [modules] . . . ." The council did not authorize the installation of any additional modules on that concrete pad.[3]

From that decision, the plaintiff timely appealed to the Superior Court. The operative complaint, the plaintiff's second amended complaint dated June 7, 2013, alleges that the council acted arbitrarily and capriciously in nine respects.[4] Both Dominion and the council thereafter moved to dismiss the administrative appeal for lack of subject matter jurisdiction.[5] By memorandum of decision dated March 11, 2014, the court concluded that the plaintiff lacked the requisite standing and thus dismissed the appeal. This appeal followed.

It is well established that "[a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim." (Internal quotation marks omitted.) *Lewis* v. *Slack*, 110 Conn. App. 641, 643, 955 A.2d 620, cert. denied, 289 Conn. 953, 961 A.2d 417 (2008). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she]

has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Sadloski* v. *Manchester*, 228 Conn. 79, 84, 634 A.2d 888 (1993), on appeal after remand, 235 Conn. 637, 668 A.2d 1314 (1995). "[T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause."[6] (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Slack*, supra, 643–44.

"To be entitled to invoke the judicial process, a party must have suffered an aggrievement." *Kelly* v. *Dearington*, 23 Conn. App. 657, 660, 583 A.2d 937 (1990). "Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement . . . exists by legislative fiat . . . . In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 64–65, 946 A.2d 862 (2008). "[T]he question of whether the pleadings set forth sufficient facts, if presumed true, to establish a party's aggrievement presents a question of law over which we exercise plenary review." *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 273, 92 A.3d 247 (2014). With those principles in mind, we turn to the question of whether the court properly concluded that the plaintiff lacked standing to maintain this administrative appeal.

I

At the outset, we note what is not in dispute. In her complaint, the plaintiff did not specify whether her appeal was brought pursuant to CEPA or the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. With respect to the latter, our Supreme Court has explained that "[b]ecause the UAPA does not, by itself, render the plaintiffs statutorily aggrieved for standing purposes," a party must establish that it is classically aggrieved. *Financial Consulting, LLC* v. *Commissioner of Insurance*, 315 Conn. 196, 227, 105 A.3d 210 (2014); see also *Bingham* v. *Dept. of Public Works*, 286 Conn. 698, 704, 945 A.2d 927 (2008) ("the UAPA . . . requires that the appealing party be aggrieved in order to bring the appeal"). In its memoran-

dum of decision, the court found that the plaintiff was not classically aggrieved because she failed to allege a specific, personal and legal interest in the subject matter of the decision rendered by the council, rather than a general interest shared by members of the community. See *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 486, 815 A.2d 1188 (2003). The plaintiff in this appeal does not contest the propriety of that determination. Accordingly, our consideration of the question of the plaintiff's standing is confined to whether the allegations of her operative complaint establish statutory aggrievement under CEPA.

II

Although "[t]raditionally, citizens seeking to protect the environment were required to show specific, personal aggrievement to attain standing to bring a legal action," CEPA waives that requirement by providing that "any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." (Internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 556, 23 A.3d 1176 (2011). With respect to administrative proceedings, § 22a-19 (a) confers such statutory standing on intervening parties.[7]

As our Supreme Court has explained, "in order to survive a motion to dismiss, [a plaintiff seeking to assert a claim under § 22a-19] must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 35, 959 A.2d 569 (2008). "A complaint does not sufficiently allege standing . . . by merely reciting the provisions of § [22a-19], but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) Id. To ascertain whether the plaintiff has articulated a colorable claim of environmental harm, we therefore must scrutinize the allegations of the operative complaint.

Paragraph 12 of that complaint contains nine distinct allegations of arbitrary and capricious action by the council. See footnote 4 of this opinion. Paragraph 12 (C) alleges that "[t]he council failed to adequately consider the environmental and health implications and consequences of the application as required by law . . . ." Bereft of any factual allegations of environmental harm, subparagraph (C) merely asserts a legal conclusion, and thus plainly is inadequate.[8] See *Finley* v. *Inland Wetlands Commission*, supra, 289 Conn. 35 (complaint does not sufficiently allege standing by

merely reciting provisions of § 22a-19); *Wucik* v. *Planning & Zoning Commission*, 113 Conn. App. 502, 507–508, 967 A.2d 572 (2009) (conclusory statement devoid of any specific factual allegations cannot establish aggrievement); *Hendel's Investors Co.* v. *Zoning Board of Appeals*, 62 Conn. App. 263, 274, 771 A.2d 182 (2001) (conclusory statements purporting to allege aggrievement insufficient without adequate accompanying factual allegations).

The remaining eight allegations of impropriety set forth in paragraph 12 of the complaint all allege procedural error. Subparagraphs (A), (B), and (H) challenge the sufficiency of the evidence submitted by Dominion, while subparagraphs (D) and (E) allege bias on the part of the council.[9] Subparagraphs (G) and (I) allege that the council's decision is inconsistent with its prior decision in 2004, with unspecified "state policies," and with "the council's own analysis" regarding "the need for Millstone generation of electricity . . . ." Lastly, subparagraph (F) alleges that the council "acted prematurely" on Dominion's 2012 application, claiming that the council instead should have waited until after the Nuclear Regulatory Commission promulgated "an Environmental Impact Statement . . . in the year 2014 . . . ."[10] None of those claims of impropriety contain any allegations of fact that "support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities . . . ."[11] (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, supra, 289 Conn. 35. They thus do not constitute a colorable claim of environmental harm.

### III

Our Supreme Court "consistently [has] acknowledged . . . that an intervenor's standing pursuant to § 22a-19 strictly is limited to challenging only environmental issues covered by the statute and only those environmental concerns that are within the jurisdiction of the particular administrative agency conducting the proceeding into which the party seeks to intervene." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 157, 953 A.2d 1 (2008); see also *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 490, 400 A.2d 726 (1978) (intervenor that has filed verified pleading at administrative level pursuant to § 22a-19 has standing to appeal on basis of that pleading "limited to . . . environmental issues only"). The court nevertheless has carved a limited exception to that general rule involving cases in which an intervenor alleges that it was denied the right to fundamental fairness in the administrative proceeding.[12] *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 713–14, 99 A.3d 1038 (2014). The court reasoned that if parties intervening pursuant to § 22a-19 can prove their factual allegations that "the

council refused to provide them with a fair opportunity to present their claim"; id., 714; that "alleged deprivation . . . could result in decisions by the council that did not give adequate consideration to environmental issues." Id., 713. The court therefore held that "[t]he right to a fundamentally fair hearing is implicit in the right to intervene pursuant to CEPA."[13] Id., 714.

As with any standing issue, it remains that the plaintiff must plead facts sufficient to substantiate such an allegation. For example, in *FairwindCT*, *Inc.*, the plaintiffs claimed that the defendant violated their right to fundamental fairness by "preventing [them] from cross-examining witnesses, issuing protective orders and not allowing [them] adequate time to prepare for cross-examination . . . ." Id., 713. In contrast, the operative complaint in the present case contains no such allegations, nor does it reference the right to fundamental fairness. Rather, the complaint acknowledges that the plaintiff "intervened in the proceedings . . . and participated through the submission of interrogatories, cross-examination, direct testimony and the introduction of various exhibits and motions." None of the allegations of the complaint, including the nine claims of the arbitrary and capricious conduct on the part of the council, set forth any factual allegation of specific conduct that would support a finding that the council violated the plaintiff's right to fundamental fairness. Accordingly, the narrow exception outlined in *FairwindCT*, *Inc.*, is inapposite to the present case.

IV

The plaintiff also claims that her status as an intervenor in the proceeding before the council conferred "automatic statutory standing" for purposes of her appeal to the Superior Court. That contention is contrary to well established law.

Section 16-50j-17 of the Regulations of Connecticut State Agencies addresses the status of intervenors before the council. It provides in relevant part that "[n]o grant of leave to participate as an intervenor shall be deemed to be an expression by the council that the person permitted to intervene is a party in interest who may be aggrieved by any final decision, order, or ruling of the council unless such grant of leave explicitly so states." Regs., Conn. State Agencies § 16-50j-17 (b). The record in the present case does not contain such an explicit statement by the council.

Furthermore, our appellate courts consistently have "held that [m]ere status . . . as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review. *Hartford Distributors*, *Inc.* v. *Liquor Control Commission*, 177 Conn. 616, 620, 419 A.2d 346 (1979); see also *New England Rehabilitation Hospital of Hartford*, *Inc.* v. *Commission on Hospi-*

*tals & Health Care*, 226 Conn. 105, 132, 627 A.2d 1257 (1993); *Milford* v. *Local 1566*, 200 Conn. 91, 96, 510 A.2d 177 (1986); *Bakelaar* v. *West Haven*, 193 Conn. 59, 66, 475 A.2d 283 (1984); *Fox* v. *Zoning Board of Appeals*, 84 Conn. App. 628, 637, 854 A.2d 806 (2004); *Olsen* v. *Inland Wetlands Commission*, 6 Conn. App. 715, 718, 507 A.2d 495 (1986)." (Internal quotation marks omitted.) *Concerned Citizens for the Preservation of Watertown, Inc.* v. *Planning & Zoning Commission*, 118 Conn. App. 337, 344, 984 A.2d 72 (2009), cert. denied, 294 Conn. 934, 987 A.2d 1028 (2010). Our courts similarly have held that "[t]he mere statement that the appellant is aggrieved, *without supporting allegations as to the particular nature of the aggrievement*, is insufficient." (Emphasis added; internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 542–43, 833 A.2d 883 (2003). We decline to depart from that settled precedent.

Under Connecticut law, "[t]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised. . . . A plaintiff has the burden of proof with respect to standing. . . . To establish aggrievement . . . the plaintiff [must allege] facts which, if proven, would constitute aggrievement as a matter of law . . . ." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Glastonbury*, 145 Conn. App. 122, 128–29, 74 A.3d 512 (2013), cert. denied, 311 Conn. 901, 83 A.3d 348 (2014); see also *Martin* v. *Brady*, 261 Conn. 372, 376, 802 A.2d 814 (2002) (reviewing court must examine pleadings to decide if plaintiff has alleged sufficient facts to establish subject matter jurisdiction); *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, supra, 226 Conn. 120 ("[p]leading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal"). With respect to matters brought pursuant to § 22a-19, to survive a motion to dismiss for lack for standing, the plaintiff's "complaint . . . must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, supra, 289 Conn. 35. It therefore was incumbent on the plaintiff to allege such facts in her operative complaint to establish standing to maintain her appeal before the Superior Court.

The plaintiff has not met that burden. Absent from her operative complaint is any colorable claim of probable environmental harm or deprivation of her right to fundamental fairness before the council. Perhaps cognizant of that deficiency, the plaintiff argues that the Superior Court improperly confined its review to the operative pleadings before it at the time that the defendants moved to dismiss the appeal for lack of subject matter

jurisdiction. She posits that the court was required to consider not only the allegations set forth in the operative complaint, but also those contained in the December 7, 2012 notice of intervention that she filed with the council in the underlying proceeding. For two reasons, we disagree.

First and foremost, the plaintiff has provided no legal authority in support of that novel contention, which runs contrary to our law. Connecticut is a fact pleading jurisdiction. See Practice Book § 10-1; *Florian* v. *Lenge*, 91 Conn. App. 268, 274, 880 A.2d 985 (2005). In the context of administrative appeals brought pursuant to § 22a-19, our Supreme Court has held that a plaintiff's "complaint . . . must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, supra, 289 Conn. 35; see also *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, supra, 312 Conn. 273 (noting that reviewing court "must examine the *complaint* to determine whether it contains allegations" sufficient to establish aggrievement [emphasis in original]); *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 545, 427 A.2d 822 (1980) ("[w]e must examine each count of the complaint . . . to determine whether [the] plaintiff . . . has standing to sue"). Indeed, General Statutes (Rev. to 2011) § 22a-19 (a) expressly requires an intervening party to file "a verified pleading" that specifies "conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state." As we already have discussed, the operative complaint in the present case lacks such factual allegations.

Second, the operative complaint does not reference the plaintiff's December 7, 2012 notice of intervention in any manner, and it was not appended thereto. Moreover, at the time that Dominion moved to dismiss the appeal for lack of subject matter jurisdiction on July 29, 2013, that notice of intervention was not in the record before the Superior Court. It is well settled that if "the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." (Internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, supra, 300 Conn. 550. Because the December 7, 2012 notice of intervention was neither referenced in the operative complaint nor submitted into the record at the time that the defendants moved to dismiss the appeal, we cannot agree with the plaintiff's assertion that the Superior Court made a "deliberate decision to disregard the notice of intervention," as she argues in her appellate brief.[14]

Rather, it appears to us that, consistent with Connecticut precedent, the court properly halted the proceeding upon the filing of a motion to dismiss for lack of subject matter jurisdiction. As our Supreme Court has noted, because aggrievement implicates subject matter jurisdiction, "[a] possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." (Internal quotation marks omitted.) *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157, 856 A.2d 400 (2004). "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be *immediately* acted upon by the court. . . . [O]nce raised, either by a party or by the court itself, the question [of subject matter jurisdiction] must be answered *before* the court may decide the case." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Fennelly* v. *Norton*, 103 Conn. App. 125, 136–37, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007); see also *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996) (once motion to dismiss for lack of subject matter jurisdiction filed, trial court "obligated" to scrutinize initial complaint to determine whether subject matter jurisdiction was lacking before considering motion to amend complaint); *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) ("as soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made"). We refuse to assign error to a court's failure to consider a document that was not properly part of the record before it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In hearing appeals from decisions of the council, the Superior Court acts as an appellate body. *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 85, 942 A.2d 345 (2008).

[2] Hereinafter, unless otherwise indicated, all references to § 22a-19 in this opinion are to the 2011 version of the statute.

[3] As the council acknowledges in its appellate brief, it "did not give Dominion the authority to build and install" any additional modules, but rather simply permitted Dominion to expand the concrete pad "to accommodate additional [modules] in the event Dominion needed to seek [council] approval in the future."

[4] Paragraph 12 of the operative complaint alleges in relevant part that "[i]n approving the application . . . the council acted arbitrarily and capriciously and in violation of law as follows: "(A) The council lacked a proper and adequate basis in fact to make a legally supportable determination that Dominion presented changed circumstances sufficient to support modification of the council's [2004 approval];

"(B) The council improperly and illegally relied upon information submitted by Dominion which it knew to be deliberately misleading and inaccurate;

"(C) The council failed to adequately consider the environmental and health implications and consequences of the application as required by law;

"(D) The council manifested bias, prejudice and predetermination of the application;

"(E) Edward C. Wilds, the Connecticut Department of Energy and Environmental Protection's designee on the council [in this proceeding], suffered from a conflict of interest which he failed to disclose, bias and prejudgment and, upon information and belief, he improperly influenced other members of the [council] in favor of the application;

"(F) Without adequate justification, and in the absence of demonstrated

need for speedy action on the part of Dominion, the council acted prematurely to approve the application in light of the fact that the [United States] Nuclear Regulatory Commission (NRC), under orders of the [United States] Court of Appeals for the District of Columbia Circuit, is embarking for the first time on creating an Environmental Impact Statement, required by the National Environmental Protection Act, to examine the environmental consequences of on-site storage of high level nuclear waste at all the nation's commercial nuclear power plants, including Millstone, an undertaking the NRC anticipates it will complete in the year 2014 and which will have significant implications for spent fuel storage at Millstone;

"(G) The [council's] decision violates [its prior decision in 2004] insofar as it allows a permanent spent nuclear fuel storage site and it is inconsistent with the council's findings of fact in [that prior decision], paragraph 25, as follows: 'The [facility] is neither a long term . . . storage site nor permanent repository for the storage of spent fuel.' Insofar as it allows long term and/or permanent storage of spent nuclear fuel at Millstone and it is therefore illegal and in conflict with state policies;

"(H) Dominion failed to demonstrate a legally or factually sufficient basis for the council to find a justifiable need for the modification;

"(I) The decision is in conflict with the council's own analysis that concludes that the state of Connecticut has sufficient surplus power over the next decade to negate the need for Millstone generation of electricity and thus continued generation of high level nuclear waste and the need for expanded nuclear spent fuel storage."

[5] After the defendants moved to dismiss the administrative appeal for lack of jurisdiction, the plaintiff requested permission to further amend her complaint, which the court denied, noting the "well established 'jurisdiction-first' rule. See, e.g., *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 839 n.6, 826 A.2d 1102 (2003)." The plaintiff does not challenge that ruling in this appeal.

[6] In her appellate brief, the plaintiff submits that because the defendants did not object to her intervention in the proceeding before the council, they have waived any objection with respect to her standing to maintain this administrative appeal. That argument misunderstands our standing jurisprudence. "[T]he question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, *at any time*." (Emphasis added; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). Moreover, "[i]t is hornbook law that the parties cannot confer subject matter jurisdiction on a court by consent, waiver, silence or agreement." *Hayes* v. *Beresford*, 184 Conn. 558, 562, 440 A.2d 224 (1981). Accordingly, our courts consistently have held that "[t]he requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Burton* v. *Dominion Nuclear Connecticut, Inc.*, 300 Conn. 542, 550, 23 A.3d 1176 (2011).

[7] General Statutes (Rev. to 2011) § 22a-19 (a) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

[8] In contrast to the conclusory statement set forth in paragraph 12 (C) of the plaintiff's complaint, the complaint in *Finley* contained detailed allegations of fact that gave rise to a colorable claim of environmental harm. That complaint alleged in relevant part that "[g]iven the amount of impervious cover being introduced onto [the subject] property, the application failed to satisfactorily account for removal of dissolved solids, inorganic and organic nitrogen, salt, trash, pathogenic bacteria and various aromatic hydrocarbons, and the deleterious effects of such pollution on wetlands and watercourses. In addition, [the complaint] alleged that [t]he application did not contain adequate information about the vernal pool or other wetland features to support assertions of lack of wetland impact given the scale and intensity of development and the anticipated vehicular traffic associated therewith. . . . [The complaint also] alleged that the regulated activities allowed by the permit granted . . . by the commission would have a specific deleterious effect and impact on these environmental resources." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, supra, 289

Conn. 35–36.

[9] To be clear, subparagraphs (D) and (E) allege that the council—and one of its members in particular—displayed bias with respect to Dominion's application; they do not contain any allegations of bias with respect to the plaintiff or her involvement in the proceeding.

[10] To the extent that subparagraphs (F) and (G) of paragraph 12 of the complaint could be broadly construed to invoke environmental risks related to radiological safety, they are beyond the purview of the council and, hence, improper. In *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, supra, 286 Conn. 79, our Supreme Court held that "considerations of environmental risks related to radiological safety fall squarely within the field preempted by federal law. Indeed, a decision by the council denying the certificate on the basis of environmental effects caused by radiation hazards actually would conflict with the [Nuclear Regulatory Commission's] regulations . . . . Accordingly, with respect to environmental concerns, we conclude that the council's jurisdiction is limited to nonnuclear environmental effects." (Citation omitted.)

[11] In her appellate brief, the plaintiff also argues that the "council affirmatively abdicated its legal regulatory responsibility to assess the potential effects of hurricanes and flooding on the infrastructure within its jurisdiction and instead 'deferred' to the [Nuclear Regulatory Commission]." The operative complaint contains no such allegations.

[12] The procedural right involved in administrative proceedings properly is described as a right to fundamental fairness, as distinguished from the due process rights implicated in judicial proceedings. *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 n.11, 703 A.2d 101 (1997). "Administrative hearings . . . are informal and governed without necessarily adhering to the rules of evidence or procedure. . . . Nonetheless, administrative hearings must be conducted in a fundamentally fair manner so as not to violate the rules of due process. . . . A fundamental principle of due process is that each party has the right to receive notice of a hearing, and the opportunity to be heard at a meaningful time and in a meaningful manner." (Citations omitted.) *Bryan* v. *Sheraton-Hartford Hotel*, 62 Conn. App. 733, 740, 774 A.2d 1009 (2001); see also *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 536, 525 A.2d 940 (1987) (administrative due process requires due notice and right to produce relevant evidence). "The right to fundamental fairness in administrative proceedings encompasses a variety of procedural protections, including the right to adequate notice . . . . [Our Supreme Court at times has] characterized these procedural protections as due process rights. . . . Although the due process characterization, at first blush, suggests a constitutional source, there is no discussion in these cases of a property interest in terms of constitutional due process rights. These decisions are, instead, based on a line of administrative law cases and reflect the development, in Connecticut, of a common-law right to due process in administrative hearings." (Citation omitted; internal quotation marks omitted.) *Megin* v. *Zoning Board of Appeals*, 106 Conn. App. 602, 607 n.6, 942 A.2d 511, cert. denied, 289 Conn. 901, 957 A.2d 871 (2008).

[13] The defendants maintain that the exception enunciated in *FairwindCT, Inc.*, applies only to cases in which that party also has raised a colorable claim of environmental harm. In so doing, they rely on the court's statement that "[i]t would be absurd to conclude that the plaintiffs had standing to intervene in the hearings before the council pursuant to § 22a-19 because they *had made a colorable claim that the proposed projects would harm the environment*, but they have no standing to claim that the council refused to provide them with a fair opportunity to present their claim." (Emphasis added.) *FairwindCT, Inc.* v. *Connecticut Siting Council*, supra, 313 Conn. 713–14. We need not decide whether that exception is so limited, as the operative complaint in this case lacks any allegations that the council refused to provide the plaintiff with a fair opportunity to present her claims. See id., 714.

[14] More than one-half year after Dominion moved to dismiss the appeal for lack of subject matter jurisdiction, the plaintiff on February 10, 2014, filed a motion to supplement her memorandum of law in opposition to Dominion's motion to incorporate a copy of the notice of intervention. By order dated March 10, 2014, the court denied the plaintiff's motion. Although the plaintiff in this appeal baldly asserts that the court improperly "disregarded" her notice of intervention, she has not properly briefed a claim that the court abused its discretion in denying her February 10, 2014 motion to supplement. In her appellate brief, the plaintiff fails to set forth an applicable standard of review or to cite relevant authority in support thereof. "We

consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Mendez*, 154 Conn. App. 271, 275 n.2, 105 A.3d 917 (2014); see also *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 51 n.23, 861 A.2d 473 (2004). ("[i]nasmuch as the plaintiffs' briefing of the . . . issue constitutes an abstract assertion completely devoid of citation to legal authority or the appropriate standard of review, we exercise our discretion to decline to review this claim as inadequately briefed"). To the extent that the plaintiff's brief could be construed as raising a challenge to the propriety of the court's denial of her motion to supplement, we decline to afford it review. We nonetheless note that, under Connecticut law, when a defendant has filed a motion to dismiss for lack of subject matter jurisdiction, our trial courts are obligated to rule on that motion before considering any requests by the plaintiff to amend or supplement their pleadings. *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996); see also *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991) ("the trial court should not have allowed the amendment [to the complaint] before ruling on the motion to dismiss [for lack of subject matter jurisdiction]").

---